507 A.2d 648

**Najee Shadeed Abdul ALI aka William Thompson**

v.

**STATE of Maryland.**

**No. 1242, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

May 7, 1986.

Isaac S. Kershner, Assigned Public Defender (Alan H. Murrell, Public Defender on brief), Baltimore, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and Barbara Jung, Asst. State's Attorney for Baltimore County on brief, Towson), for appellee.

Submitted before MOYLAN, BISHOP and ROBERT M. BELL, JJ.

MOYLAN, Judge.

The appellant, Najee Shadeed Abdul Ali, a/k/a William Thompson, was convicted by a Baltimore County jury, presided over by Judge Joseph F. Murphy, Jr., of first-degree murder and related charges, involving several victims. Upon this appeal, he raises the following two contentions:

1) That Judge Murphy erroneously refused to admit in evidence written reports of a police officer's interviews with a State's witness; and

2) That Judge Murphy erroneously permitted a physician to testify as an expert witness on the potential effect of medication upon a State's witness.

The first contention presents a twinkling gem of an evidentiary problem containing hearsay, hearsay exceptions, and non-hearsay. Its flaw is that it blurs into a single face what should be two distinct facets. It has failed to appreciate that:

"If B asserts that A asserted $x$, the admissibility of $x$ will depend upon qualifying not only A's assertion but B's assertion as well."

A key State's witness was Debbie Rae McNally Waligora, one of the assault victims and herself a drug user. The defense sought to impeach her testimonial credibility by showing that she had on prior occasions given statements inconsistent with her trial testimony. Those statements had been given to Baltimore County Police Officer Robert R. Ash, who had interviewed Ms. Waligora at the hospital, where she was recovering from gunshot wounds, on June 3, June 4, and June 5, 1981. Officer Ash, who had conducted the interviews at the request of another officer, filed written reports of the interviews. The defense sought to introduce those reports. Judge Murphy rejected them.

The appellant claimed that Ms. Waligora's testimony in the State's case-in-chief was materially different from the statements she had made in her interviews with Officer Ash. He contends, therefore, that those statements were admissible for impeachment purposes as prior inconsistent

statements. The appellant, of course, is absolutely right as to the admissibility of those statements if, indeed, such statements were ever made. Their admissibility is one matter; their very existence, quite another.

■ Hearsay may be defined as an out-of-court assertion offered in court for the truth of the matter asserted, resting for its value upon the credibility of the out-of-court assert-er. The statements made by Ms. Waligora in her hospital room were out-of-court assertions. They were offered by the appellant in court, however, not for the truth of the matter asserted. They were offered, rather, simply for the fact that they had been made. Their value did not rest upon the credibility of the out-of-court asserter, Ms. Waligora; on the contrary, their putative value was in trying to demonstrate her non-credibility. For the purpose for which they were offered, therefore, the assertions made by Ms. Waligora were non-hearsay. Their truth was immaterial. The propriety under Maryland law of impeaching a witness by showing a prior inconsistent statement is well established. *Smith v. State*, 273 Md. 152, 328 A.2d 274 (1974).

The appellant, however, has confused the admissibility of Ms. Waligora's out-of-court assertions with the admissibility of Officer Ash's out-of-court assertions. The two have nothing in common.

■ Ms. Waligora's out-of-court assertions narrated events at the crime scene; Officer Ash's out-of-court assertions narrated the statements made by Ms. Waligora in her hospital room. Ms. Waligora's assertions were made to Officer Ash; Officer Ash's assertions were made to a piece of paper. The value of Ms. Waligora's assertions did not rest upon her credibility; the value of Officer Ash's assertions did rest upon his. Ms. Waligora's assertions were not offered for the truth of the matter asserted; Officer Ash's were. Ms. Waligora's assertions, for the purpose for which they were offered, were non-hearsay; Officer Ash's, for the purpose for which they were offered, were hearsay.

■  The admissibility of Ms. Waligora's out-of-court assertions, if made, is clear. That is not the issue. The question is what competent evidence was offered to prove that the out-of-court assertions were ever made by Ms. Waligora? The most reliable evidence as to the making of such assertions was obviously the testimony of Officer Ash himself. As a witness to the assertions, he should ideally have testified. He would thereby have been subjected to the classic trustworthiness-conditioning devices of having his demeanor and manner of testifying observed by the jurors, of being placed under oath, and of being subjected to cross-examination. Officer Ash was available to testify and there was no reason, therefore, to dispense with the trustworthiness-conditioning devices. As a matter of fact, Officer Ash did testify and did relate the out-of-court assertions made to him by Ms. Waligora in her hospital room. What the appellant sought, by offering Officer Ash's earlier hearsay in addition to his trial testimony, was "to gild the lily." By way of gilding or otherwise, however, Officer Ash's out-of-court assertions, made in the course of his written report, simply did not qualify under any of the recognized exceptions to the Hearsay Rule.

■  The substance of a criminal investigation set forth in a police report, as opposed to "aspects of the accident [scene] observable by the investigating officer," does not come in under the business records exception, codified in Md.Cts. & Jud.Proc.Code Ann. § 10–101(b). *Aetna Casualty & Surety Co. v. Kuhl*, 296 Md. 446, 454, 463 A.2d 822 (1983); *Cain v. State*, 63 Md.App. 227, 233, 492 A.2d 652 (1985).

■  The reports, which may have been referred to by Officer Ash during his testimony, were used, if at all, to refresh his recollection. It was the appellant who called Officer Ash to the stand; the appellant did not seek to scrutinize the notes which might have been used by Officer

Ash to refresh his recollection. The appellant does not urge admissibility on that ground. A decision on admissibility in that context, moreover, rests solely in the discretion of the trial judge. *Wilson v. State,* 20 Md.App. 318, 315 A.2d 788 (1974).

■ It is equally clear that the out-of-court assertions made by Officer Ash in the course of making out his reports could not have been received as non-hearsay for impeachment purposes. With respect to the asserter (Officer Ash), they were not prior inconsistent statements at all; they were rather totally consistent with his trial testimony. To establish consistency or inconsistency, Officer Ash's prior statements (his police reports) must be compared with Officer Ash's testimony, not with Ms. Waligora's testimony. The appellant, moreover, was hardly in a position to impeach his own witness. Even if they had been received for such a limited impeachment purpose, the out-of-court assertions would not have been admissible as substantive evidence and would, therefore, have been utterly useless to impeach Ms. Waligora.

Judge Murphy was correct in ruling the police reports inadmissible as a violation of the Hearsay Rule.

The appellant's second contention is also without merit. Dr. Roger Schneider was on duty in the emergency room and treated Ms. Waligora when she was brought into the hospital at 4:30 a.m. on July 3, 1981. He prescribed certain medication for her, both upon her arrival and through her stay as an in-patient.

Over defense objection, Dr. Schneider was permitted to testify as to the potential effect such medication might have upon a patient:

"Q. [By the Assistant State's Attorney]: Do you have an opinion within a reasonable degree of medical certainty as to what, if any, side effects the two drugs [Demerol

and Visataril] being given together in those dosages at those times would have on Mrs. McNally [Waligora]?

A. Yes, I do.

Q. Could you give us that please, Doctor?

A. There are multiple potential side effects to these drugs. One is nausea and vomiting. The second is respiratory depression. Third is increased sleepiness or drowsiness. And fourth is a lack of complete ability to respond coherently to questions."

The appellant's objection, of course, was to that part of the doctor's response referring to a "lack of complete ability to respond coherently to questions." Judge Murphy, in overruling the appellant's objection, stated:

"He's not going to be permitted to say that she was coherent or incoherent. He's only going to be permitted to say the probable effect of the drugs that the record shows she was administered at the particular time."

■ The admissibility of expert testimony is largely within the discretion of the trial court. *Waltermeyer v. State,* 60 Md.App. 69, 480 A.2d 831 (1984). The opinion of the expert here was relevent. It was of such a nature as to aid the trier of fact. *Cider Barrel Mobile Home Court v. Eader,* 287 Md. 571, 414 A.2d 1246 (1980).

The appellant raised the issue of Ms. Waligora's responses made to the police during the course of her hospital stay. From the fact that those responses, made while under medication, were not fully compatible with her later trial testimony, the appellant would have had the jury believe that she was a demonstrated liar. That the State was permitted to offer a plausible alternative explanation clearly helped to keep the jury from being led astray. That is the ever-present goal of the trial judge as he exercises his discretion in furtherance of the search for truth. We see no abuse.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.