534 A.2d 1380

**Alvin FAULKNER**

v.

**STATE of Maryland.**

**No. 460, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Jan. 11, 1988.

512

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and John J. McCarthy, Asst. State's Atty. for Montgomery County on the brief, Rockville), for appellee.

Submitted before WILNER, ALPERT and BELL, ROSALYN B., JJ.

ROSALYN B. BELL, Judge.

Alvin Faulkner was convicted by a jury in the Circuit Court for Montgomery County of attempted first degree murder, attempted second degree murder, robbery with a deadly weapon and use of a handgun. He was sentenced to life, 30 years, 20 years and 20 years respectively—concurrently with each other but consecutive to a 25–year term of incarceration imposed in another case. Ten issues were raised on appeal. Since we will reverse on the last issue raised, we will not consider all. In the interest of judicial economy, however, we will comment on some of the other issues in the event there is a retrial.

A Safeway grocery store in Montgomery County was robbed on four occasions: April 19, 1985; October 18, 1985; November 15, 1985;[1] and January 10, 1986. In this case, Faulkner was on trial for the January 10 robbery. Earl Carter, a Safeway manager, was shot at the January 10 robbery. The State contended that Faulkner committed all of the robberies and that the evidence of the other three should be admissible in the trial of the January 10 robbery under the identity exception to the rule excluding evidence

---

1. Faulkner was also convicted of the November 15 robbery in another case which is on appeal.

of other crimes. At trial, the State adduced evidence only of the January 10 robbery and the November 15 robbery.

## HEARSAY

On appeal, appellant argues that the trial court erred in admitting hearsay evidence. At issue is Michael Edwards's [2] testimony about a conversation he had with another witness, appellant's brother, Larry Faulkner. Appellant argues that Edwards' testimony about the conversation was inadmissible hearsay. In response, the State claims that the testimony was not hearsay as the testimony was offered to prove that the conversation occurred and to impeach Larry. We agree with appellant and, therefore, we will reverse.

At trial, the State asked Larry whether he recalled discussing the Safeway robberies with Edwards in early 1986. Larry initially responded that he did not recall the discussion. He was then asked whether he told Edwards that, on the evening of the January 10 robbery, appellant came home with a wad of money and wet clothes and then burned the clothes.[3] Larry answered that the discussion "was not like that," and that he did not remember telling Edwards that appellant burned his clothes when he came home. The court then asked Larry whether he ever told Edwards that he observed appellant burn his clothes. This time Larry replied in the affirmative. Larry also stated that he did not recall discussing with Edwards appellant's possession of some money.

Edwards was called and testified that he did talk with Larry in early 1986. According to Edwards, they discussed appellant and the money and wet clothes. Defense counsel

---

**2.** Edwards was appellant's prior employer and an acquaintance of the Faulkner family.

**3.** At trial, the State argued that appellant burned his clothes in an attempt to cover up evidence which implicated him to the Safeway robbery.

**516**

objected to Edwards' testimony as hearsay. The Assistant State's Attorney replied:

"I am not offering it as an exception to the—I am offering it for prior inconsistent statements and impeachment."

Defense counsel objected despite the representation by the State that the statement was "being offered for truthfulness, and not merely to impeach him." Without further urging, the trial judge announced:

"I am going to take a quantum leap here, and I think that given the circumstances of how and when this statement was made, that it would be probative for the Jury to hear what was said to this man within a short period of time of the commission of the robbery by one of the brothers of the Defendant in this case. It would be probative, and would be helpful to the trier of fact, and, therefore, I am going to allow it in, and we will see what somebody else says to me at some later time about it.

"[Defense Counsel]: Is the Court going to let it in for impeachment, or for substantive value, and if it is for impeachment, I would like the cautionary instruction.

"THE COURT: Well, I am going to allow it because— for the substance of what was said, and I am not going to give the cautionary instruction, so the record is clear on that. Okay?"

The State, faced with what was probably an unexpected bonus, replied "okay," and defense counsel asked for a continuing objection. No cautionary instruction was given.

In order to resolve the issue before us, we must look to the law of hearsay evidence. Hearsay is an out-of-court assertion offered in court for the truth of the matter asserted and is generally inadmissible. *Ali v. State*, 67 Md.App. 339, 343, 507 A.2d 648 (1986). An out-of-court statement may not be hearsay if offered for a limited permissible purpose and not for the truth of the matter asserted. Two of the permissible purposes are:

1) to prove that a statement—known as a verbal act—was made, *Best v. State,* 71 Md.App. 422, 432 [526 A.2d 75] (1987); McLain, Maryland Evidence, § 801.7 (1987); and

2) to impeach a witness, *Sun Cab Co. v. Cusick,* 209 Md. 354, 361–62 [121 A.2d 188] (1956); *Ali,* 67 Md.App. at 343, [507 A.2d 648]; McLain, Maryland Evidence, § 801.12 (1987).

On appeal, the State argues, as it did at trial, that Edwards's testimony is not hearsay because the testimony was offered for the above two limited purposes and not to prove the truth of the matter asserted therein.

■ Although the State offered the testimony for the limited purposes mentioned, the trial court, *sua sponte,* admitted the testimony as substantive evidence and gave no instruction limiting the purpose of the testimony. Edwards's testimony of the conversation he had with Larry, admitted for the truth of the matter asserted, was hearsay and did not meet with either of the proffered exceptions. For this reason, we reverse.

We will address several of the remaining issues as they may recur during a retrial.

## DISCLOSURE OF INFORMANTS' NAMES

■ Prior to trial, appellant requested that the trial court require the State to disclose the identity of individuals who had provided the police with information which connected appellant to the Safeway robberies. Defense counsel contended that the identity of these informants—Crime Solvers' informants' numbers 1719 and 2141, and a traditional confidential informant—was necessary to appellant's defense preparation. Defense counsel proffered that each informant had information which was relevant and helpful to appellant's defense. Counsel contends that number 1719 had knowledge of how the crimes were committed and of the identities of the perpetrators, and number 2141 had information relating to appellant's activities on one of the

nights in question. Finally, defense counsel claimed that the traditional confidential informant had information relating to appellant's possession of a gun of a different caliber than the gun used in the robberies. According to defense counsel, that information was relevant and helpful to appellant's defense. The State contended that the three informants were not accessories or participants in the crimes or direct witnesses to them. Thus, the State argued that disclosure of the informants' names was not required.

### —The Informants—

The Montgomery County Crime Solvers program is a cooperative venture of the Montgomery County Police Department and a group of private citizens. The program requests that the public provide it with information concerning crimes. Anonymous and confidential telephone calls are received from informants. The informants report facts related to crimes, including the alleged identities and whereabouts of the perpetrators. Rewards are offered to informants when they provide information which leads to an arrest or an indictment. Rewards were made in this case.

The State contends that confidentiality and anonymity are essential to the successful operation of the Crime Solvers program since informants give information under the representation that their identities will remain anonymous. A traditional informant, like a Crime Solvers' informant, also provides the police with confidential and anonymous information about crimes. The traditional informant, however, usually is not responding to the Crimes Solvers' request for information but, instead, is voluntarily informing the police about facts he or she knows about a crime. Confidentiality and anonymity are no less important to assure the continued assistance of traditional informants than that of Crime Solvers' informants. If the State is unable to preserve the confidentiality and anonymity of informants, many individuals who possess information relating to crimes will be unwilling to provide the police with the information in the future. Moreover, if anonymity is breached, informants'

lives could be endangered by revenge-seeking criminals. In sum, without anonymity and confidentiality, the public would not be as willing to give police information about crimes, and additionally, the lives of informants could be endangered. The State was understandably opposed to disclosure of the informants' identities.

After the court entertained the proffers by defense counsel concerning appellant's need for disclosure, the court ruled that the State was not required to disclose the informants' names. In appellant's view, a proper exercise of discretion would have resulted in disclosure. We affirm the ruling of the trial court. We will explain.

### —Disclosure—

We recently summarized the law applicable to the State's privilege to withhold disclosure of an informant's identity as follows:

" 'The State is privileged to withhold disclosure of an informant's identity to further and protect the public's interest in effective law enforcement.' The privilege is not absolute however and its exercise is a matter which is largely left to the sound discretion of the trial court, which judicial discretion does not have to be exercised until and unless the defense properly demands that an informant's identity be disclosed, and shows by a preponderance of the evidence that information concerning the informant is necessary and relevant to a fair defense. The burden then shifts to the State to rebut by clear and convincing evidence the showing made by the defense. It is when the case is in this posture that the trial court must

'... balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'

*Howard v. Smith,* 66 Md.App. 273, 285–86, 503 A.2d 739, *cert. denied,* 306 Md. 288, 508 A.2d 488 (1986) (citations omitted). In *Howard,* 66 Md.App. at 286, 503 A.2d 739, we also said:

> "Where the informant is a 'tipster', and not a participant, accessory, or witness to the crime, disclosure of his identity is not required. On the other hand, where the informant participates in the crime or other activities associated with the crime, evidence of which is introduced into evidence or utilized by the trier of fact in deciding the case, it is reversible error to fail to disclose the informant's identity." (Citations omitted.)

Appellant correctly points out that relevance and helpfulness to the defense are factors to be considered in the determination of whether to require disclosure. Appellant contends that the trial court did not properly consider whether disclosure of the informants' names would have been relevant and helpful to his defense. Our review of the proceedings reveals otherwise.

The trial court allowed defense counsel the opportunity to establish the reasons requiring disclosure. Appellant alleged that Crime Solvers' informant number 1719 had detailed information regarding the crime. That information directly inculpated appellant in the robbery for which he was convicted in the present case. At the hearing on the motion, defense counsel stated that informant number 1719 had obtained the information from a State's witness, Brian Corkery. Defense counsel also said that the informant could be used to impeach Corkery on his alleged statement to the informant that Tom Peavy had been the wheelman in the January 10 robbery. We do not see how the identity of informant number 1719 would have aided the defense. To impeach Corkery by cross-examining him about what might be a prior inconsistent statement that Peavy pulled the January robbery with appellant would strengthen the State's case that appellant robbed the Safeway in January. Actually, when Corkery testified at trial, he did not directly implicate appellant in the January robbery.

Crime Solvers' informant number 2141 stated that appellant went to Russ Tuddle's house at 3:00 a.m., the morning after the robbery. That information was not relevant to the issue of whether appellant was the masked robber at the Safeway the prior evening at approximately 9:30 p.m.

Finally, the information obtained from the confidential informant was that in January Larry Faulkner had asked appellant to return to him a .45 caliber handgun which had been used in a bank job. That information as such was not exculpatory and merely suggested that appellant and/or Larry had committed a crime, possibly not even the one involved in the present case. Since the information was allegedly originally obtained from appellant and his brother, defense counsel was obviously able to pursue the matter through them.

At the conclusion of the hearing, the court determined that, since the confidential informants were not participants in or accessories to the crimes or intended witnesses, disclosure was not required, absent additional evidence. Appellant did not show by a preponderance of the evidence that the information was necessary and relevant to a fair defense. *Howard,* 66 Md.App. at 285, 503 A.2d 739. We hold there was no error.

## EVIDENCE OF ANOTHER CRIME

■ Appellant contends that the trial court erroneously admitted evidence of another crime. He asserts that the evidence was unnecessary and that the potential for prejudice greatly outweighed the probative value. Appellant argues that the State had other identification evidence which connected him to the January 10 robbery and, hence, did not need the November 15 robbery evidence.

Generally, evidence of a defendant's prior criminal acts may not be introduced to prove that he is guilty of the offense for which he is on trial. *State v. Werner,* 302 Md. 550, 556–57, 489 A.2d 1119 (1985). There are, however, well-established exceptions to the general rule. Evidence of

another crime is admissible if substantially relevant and necessary to prove an essential fact in dispute in the crime on trial. *Cross v. State*, 282 Md. 468, 474, 386 A.2d 757 (1978); *Anaweck v. State*, 63 Md.App. 239, 256–57, 492 A.2d 658, *cert. denied*, 304 Md. 296, 498 A.2d 1183 (1985). Thus, evidence that the defendant committed another crime may be admitted when the evidence is necessary and relevant to prove that the crime for which the defendant is on trial was committed by the same person who committed the prior crime. This exception is commonly referred to as the "identity" exception.

 In appellant's case, evidence tending to prove that appellant was the perpetrator of the November 15 robbery was relevant and necessary to prove that he was the perpetrator of the January 10 robbery. As discussed in *Cross*, 282 Md. at 477–78, 386 A.2d 757, the evidence of another crime is admissible to prove identity when identity is at issue and the other crime evidence shows the perpetrator of the other crime and the perpetrator of the crime on trial: used the same *modus operandi*, wore the same clothing, or used the same objects to commit the crimes. As will be discussed below, evidence of the November 15 robbery was admissible to prove the identity of the perpetrator of the January 10 robbery.

When the other crime evidence falls within the identity exception, the trial court must then "balance the independent relevance [of the other crime evidence] against the danger of undue prejudice and decide whether to exclude th[at] evidence notwithstanding its facial admissibility. *That* is the discretionary decision—to *ex* clude otherwise admissible evidence, not to *in* clude otherwise inadmissible evidence." *Moore v. State*, 73 Md.App. 36, 45, 533 A.2d 1, 5 (emphasis in original). In balancing the need for the other crime evidence, consideration is also given to whether, absent the other crime evidence, the State would have failed to persuade a jury unanimously and beyond a reasonable doubt that defendant was guilty of the crime for which

he was on trial. *Anaweck,* 63 Md.App. at 255, 492 A.2d 658.

In the case *sub judice,* the identity of the perpetrator of the January 10 robbery was at issue. Because the perpetrator wore a hood over his head, the State did not have an eyewitness identification of appellant. Carter, the victim of the shooting connected with the January 10 robbery, testified that he thought appellant was his assailant. Carter based the identification on his observations of the assailant's size, skin color, voice and "intangibles." Nevertheless, on cross-examination, defense counsel adduced the following testimony from Carter:

"[Defense Counsel:]

"Q I believe you made your identification of [appellant] earlier. I want to get my notes on that. I believe you answered [Assistant State's Attorney's] question, 'Due to the voice and the size and the rest was intangibles, you had a feeling about it,' is that correct?

"A Correct. He was covered from head to foot. No way—

"Q You agree that the person who came in to see you had his face covered, correct?

"A Correct."

The witness went on to testify that the perpetrator's head, hands, chest and legs were covered. Lastly, defense counsel asked:

"Isn't it a fact that when you did tell the detectives that it could have been [appellant], *you really weren't sure?"*

To which appellant replied:

*"Correct. That's what I meant all along."* (Emphasis added.)

Moreover, Safeway employee Ophelia Hewitt was able to identify appellant as the perpetrator of the January 10 robbery only by comparing appellant's build to the build of the November 15 assailant. She thought appellant was the November 15 assailant and that the same person committed the November 15 and the January 10 robberies.

Witnesses identified a gun found near appellant's residence as the gun used to commit the January 10 robbery. Similarly, witnesses identified clothing found near appellant's residence as the clothing worn by the assailant. These items were only circumstantially linked to appellant as appellant's three brothers lived with appellant. Defense counsel adduced a great deal of testimony showing that the circumstantial evidence was accessible to appellant's brothers and their friends. Defense counsel sought to implicate other individuals by the circumstantial evidence.

The State additionally presented evidence that, soon after the January 10 robbery, appellant possessed a large number of one- and five-dollar bills (the primary denominations taken in the January 10 and November 15 robberies) and burned some clothing. Appellant asserts that, based on this evidence, the State did not need evidence of the November 15 robbery. We disagree.

The State needed to introduce evidence of the November 15 robbery to link appellant to the January 10 robbery. A similar *modus operandi* was employed in both robberies, and similar clothing and objects were used. On both occasions, a single black male came into the store on a Friday night between 9:00 and 10:00 p.m.. In each case, the perpetrator wore a blue denim mask with holes cut out for his eyes. The mask covered his entire head. The perpetrator wore gloves and carried a bag. The descriptions of the perpetrators' builds were substantially similar. On both occasions, the perpetrator stood on the checkout counter adjacent to the manager's office, leaned over into the office, displayed in his right hand a .22 caliber pistol, and demanded cash. In each case, the robber ran out of the Safeway through the Sentinal Street door.

Moreover, there was important evidence which simultaneously linked appellant to both robberies. Appellant's acquaintance, Robert Taylor, testified that on the evening of the January 10 robbery appellant said that he had made a "hit" and that he had hit the same place previously. Taylor also testified that he had seen appellant with wads of

money in one- and five-dollar denominations approximately two months prior to the January 10 robbery. Hewitt, familiar with appellant's build and appearance, testified that she observed the November 15 robber and believed that robber was appellant. Hewitt was then able to compare the builds of the robber of November 15 and January 10 crimes and conclude that they were the same person.

In the case *sub judice,* the State had some evidence that the perpetrator of the January 10 robbery was appellant. The evidence, however, was not overwhelming. No one saw the face of the January 10 robber, making the perpetrator's identity a major issue. The evidence which linked appellant to the robbery also linked others. The State might have been unable to establish beyond a reasonable doubt that appellant robbed the Safeway on January 10 without introducing evidence of the November 15 robbery. The introduction of evidence of the November 15 robbery rebutted defense counsel's argument linking persons other than appellant with the circumstantial evidence. The perpetrators of both robberies committed the crimes with the same *modus operandi* and wore the same clothing. The additional evidence of the November 15 robbery identified appellant as the perpetrator of the January 10 robbery and as such that evidence was necessary and relevant to the State's case. This was a discretionary decision and, in view of the lack of positive eyewitness identification, we hold the trial court did not abuse its discretion in admitting evidence of another crime.

## LAY WITNESS TESTIMONY

■ Hewitt, a Safeway employee, was present during the November 15 and the January 10 robberies. Appellant asserts that the admission of the following testimony was error because Hewitt rendered an opinion that the same individual committed both crimes:

"[Assistant State's Attorney: ]

"Q Okay. Based on your observation, did it appear to you, based on what you saw, that the individual that was

committing the robbery on January 10th was the same person who had committed the robbery that you were present on November 15th?

"[Defense Counsel]: Objection.

"THE COURT: Overruled.

"THE WITNESS: Yes."

The relevant law is clear.

"It is a fundamental general rule of the law of evidence as administered by our courts, both in civil and criminal cases, that the testimony of witnesses upon matters within the scope of the common knowledge and experience of mankind, given upon the trial, must be confined to statements of concrete facts within their own observation, knowledge, and recollection—that is, facts perceived by the use of their own senses—as distinguished from their opinions, inferences, impressions, and conclusions drawn from such facts."

31 Am.Jur.2d *Expert and Opinion Evidence* § 2 (footnotes omitted). Thus, a witness may testify as to his or her observations. Hewitt did so; we perceive no error.

### ALIBI WITNESS

■■ Appellant has asserted that the trial judge failed to exercise discretion or in the alternative abused his discretion in refusing to admit an alibi witness. Prior to trial, the State requested appellant to furnish the names of his alibi witnesses pursuant to Rule 4–263(d). Appellant responded that three witnesses would testify to verify his alibi. After the State interviewed the three witnesses, the defense concluded that those witnesses could not provide appellant with an alibi. Nevertheless, on the fourth day of trial, counsel notified the trial judge that he had a fourth alibi witness who would testify on appellant's behalf. Because appellant failed to disclose the existence of the alibi witness as required by the Rule, the trial court had the discretion to exclude the witness. The court did not allow appellant's fourth alibi witness to testify. We need not address whether the trial court abused its discretion since appellant will

have an opportunity to provide the State with timely notice of an alibi witness if there is a retrial.

We shall, however, comment briefly on the remarks made by the trial court during the inquiry of whether to allow the alibi witness to testify. Following argument for and against admission of the testimony of the alibi witness, the trial court said:

"Well, [Defense Counsel], I am not going to allow you to call this witness, and the reason is I think you have done what you should do and what your duty calls you to do when you hear about a witness, but I am not going to let this Court be used as a forum for fishing around for people who are going to come in at the last hour.

"I can tell you, [Appellant], that insofar as I know, if this man had spent that evening with you because it was tied into your birthday on January 10, 1986, you would have been screaming and yelling for months for your lawyer to get him, and to come in on the day of trial or four days into the trial and put your lawyer into the position that he has been put in is something that this Court is not going to count [sic] this. *So I am not going to be lied to, I am not going to be a party to what I perceive to be unquestionably patent perjury.* I am not going to let him do it, and so that testimony will not be allowed." (Emphasis added.)

While it appears the trial judge had ample reason to exercise his discretion and exclude the testimony, ordinarily a trial judge may not exclude testimony on his or her belief that the witness may not tell the truth. The credibility of a witness is for the trier of fact to determine, and it is not the province of the court to prejudge that credibility.

## RIGHT TO TESTIFY

 Appellant additionally claims that the trial judge committed error when he advised appellant on his right to testify. After defense counsel placed on the record his advice that appellant not testify, and appellant elected to

testify, a long colloquy occurred, starting with this state-ment by the trial judge to the appellant:

"[Appellant], I take it from what your lawyers [sic] says, notwithstanding all of the advice that he has given you, that you continue to wish to take the stand. Is that correct?

"[Appellant]: Yes, that's correct."

The trial judge warned appellant in great detail of the exposure he took in testifying. The court's admonishment covered several pages of transcript. He concluded with this advice:

"Now I do not wish to have you—I am trying very hard not to invite you to tell me why it is that you want to take the stand or what it is that you want to say, *but I can only tell you that, to the extent that it has any bearing or any help to you in making this decision, it would appear to me that you would be better off not taking the stand.*" (Emphasis added.)

The warning seemed to have had its effect in that when the trial judge asked what appellant had decided to do, he replied:

"I don't really have no choice in the issue.

"THE COURT: You do, and you can take the stand if you want, but everybody who is—the State is keeping out of this because that is none of their business. That is entirely in your province, but I feel I have a duty to let you know, as the Trial Judge in this case, and maybe somebody else might criticize me for going too far, that I ought to stay out of it entirely, but I do not think that that is—I look upon my role as being a little bit broader than maybe some others might."

"So now, what do you want to do?"

It is appellant's position "that the trial judge greatly overstepped the bounds of his role and authority by influ-encing Appellant to waive his right to testify." Ultimately, appellant said, "I am going to take my lawyer's advice," hence, we would have affirmed on this issue. We note that,

while a trial judge should be certain a defendant fully understands the decision he or she is making in deciding to testify, a trial judge should refrain from advising a defendant to testify or not testify.

JUDGMENTS REVERSED.

CASE REMANDED FOR A NEW TRIAL.

COSTS TO BE PAID BY MONTGOMERY COUNTY.