552 A.2d 896

**STATE of Maryland**

v.

**Alvin FAULKNER.**

**No. 11, Sept. Term 1988.**

Court of Appeals of Maryland.

Feb. 7, 1989.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

A jury sitting in the Circuit Court for Montgomery County (Raker, J.) convicted respondent Alvin Faulkner (Faulkner) of robbery with a dangerous or deadly weapon, use of a handgun in the commission of a felony, and conspiracy to commit robbery with a dangerous or deadly weapon. In an unreported decision the Court of Special Appeals reversed and remanded for a new trial, *Faulkner v. State,* No. 259, Sept. Term, 1987 (filed Dec. 18, 1987), holding that "other crimes" evidence was erroneously admitted into evidence at the trial preceding those convictions. We granted certiorari to decide the important issue involved.

The robbery for which Faulkner was convicted occurred on Friday, 15 November 1985, between 9:40 and 10:00 p.m. at a Safeway store located in the Little Falls Mall in Montgomery County. Robberies at that same store also occurred on Friday, 19 April 1985; Friday, 18 October 1985; and Friday, 10 January 1986. The trial court conducted a lengthy pretrial hearing on Faulkner's motion *in limine* to exclude evidence of the 19 April, 18 October, and 10 January robberies. The State proffered testimony of witnesses who would provide evidence that each of the other crimes had a similar *modus operandi* to that of the 15 November 1986 crime and would establish Faulkner's agency with respect to it.

Faulkner challenged the admissibility of the "other crimes" evidence on three grounds: (1) the State had no

need for the evidence; (2) the State could not establish by clear and convincing evidence Faulkner's involvement in the other crimes; and (3) the probative value of the evidence was outweighed by the inherent prejudice of the admission of "other crimes" evidence. The trial court ruled, however, that the State would be permitted to introduce evidence of the robberies which occurred on 19 April 1985 and 10 January 1986 for the purpose of proving the identity of the 15 November culprit.[1] The Court of Special Appeals reversed. It seems to have concluded that there was no need to use the "other crimes" evidence to establish Faulkner's identity; that the evidence of Faulkner's involvement in the 19 April affair was not clear and convincing; and that the prejudicial impact of testimony regarding the 10 January 1986 incident heavily outweighed its probative value on the issue of identity.

## I. The "Other Crimes" Rule

We have often addressed the admissibility of "other crimes" evidence. Generally, "evidence of a defendant's prior criminal acts may not be introduced to prove that he is guilty of the offense for which he is on trial." *Straughn v. State,* 297 Md. 329, 333, 465 A.2d 1166, 1168 (1983). *See Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980); *State v. Jones,* 284 Md. 232, 395 A.2d 1182 (1979); *Cross v. State,* 282 Md. 468, 386 A.2d 757 (1978); *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977); *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976); *see generally* 5 L. McLain *Maryland Practice: Maryland Evidence* § 404.5, at 352 (1987). Evidence of other crimes may tend to confuse the jurors, predispose them to a belief in the defendant's guilt, or prejudice their minds against the defendant. *Ross,* 276 Md. at 669, 350 A.2d at 684; *see also Hoes v. State,* 35 Md.App. 61, 71, 368 A.2d 1080, 1086, *cert. denied,* 280 Md. 731 (1977) (jury may be "predisposed to convict [the defendant's] 'reputation' ").

---

1. Evidence of the robbery that occurred on 18 October 1985 was excluded.

Evidence of other crimes may be admitted, however, if it is substantially relevant to some contested issue in the case and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal. *Ross*, 276 Md. at 669, 350 A.2d at 684; *see generally* C. McCormick, *Evidence* § 190 (E. Cleary 3d ed. 1984); L. McLain, *supra*, § 404.5, at 353.

Thus, there are numerous exceptions to the general rule that other crimes evidence must be suppressed. Evidence of this type may be admitted if it tends to establish motive, intent, absence of mistake, a common scheme or plan, identity, opportunity, preparation, knowledge, absence of mistake or accident. *See Ross* at 669–670, 350 A.2d at 684; C. McCormick, *supra*, § 190, at 558–564; L. McLain, *supra*, § 404.5, at 353. But, because of the potential danger involved, the admission of other crimes evidence "should be subjected to rigid scrutiny by the courts...." *Ross* at 671, 350 A.2d at 685. Additionally, the evidence proffered to the trial judge must be clear and convincing in establishing the accused's involvement in the other crimes. *Cross*, 282 Md. at 478, 386 A.2d at 764.

When a trial court is faced with the need to decide whether to admit evidence of another crime—that is, evidence that relates to an offense separate from that for which the defendant is presently on trial—it first determines whether the evidence fits within one or more of the *Ross* exceptions. That is a legal determination and does not involve any exercise of discretion. *See Cross*, 282 Md. at 474, 386 A.2d at 761; *Moore v. State*, 73 Md.App. 36, 44, 533 A.2d 1, 5 (1987), *cert. denied*, 311 Md. 719, 537 A.2d 273 (1988).

If one or more of the exceptions applies, the next step is to decide whether the accused's involvement in the other crimes is established by clear and convincing evidence. *Lodowski v. State*, 302 Md. 691, 728, 490 A.2d 1228, 1247 (1985), *defendant's petition for cert. denied*, 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725, *vacated*, 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711, *rev'd on other grounds*, 307 Md.

233, 513 A.2d 299 (1986); *Cross,* 282 Md. at 478, 386 A.2d at 764. We will review this decision to determine whether the evidence was sufficient to support the trial judge's finding.

If this requirement is met, the trial court proceeds to the final step. The necessity for and probative value of the "other crimes" evidence is to be carefully weighed against any undue prejudice likely to result from its admission. *Cross,* 282 Md. at 474, 386 A.2d at 761 [citations omitted]. This segment of the analysis implicates the exercise of the trial court's discretion. *Id.; Moore,* 73 Md.App. at 44–45, 533 A.2d at 5.

## II. This Case

We now proceed to apply these established principles to the facts of the case before us. The contested issue on which Judge Raker admitted the "other crimes" evidence was Faulkner's identity, for as defense counsel argued to the jury at trial, "the only issue is whether my client, Alvin Faulkner, was the person who was with Tom Peavy on November 15, 1985." [2] The State adduced considerable evidence in its effort to come within the identity exception to the "other crimes" rule.

The Friday, 19 April 1985, robbery occurred at approximately 9:40 p.m. An employee of Safeway, Stephen Johnson, testified that a black male, between the ages of twenty-five and thirty, who was five feet ten inches tall and 170 pounds, entered the store, stood on a check-out stand next to the store's office, and demanded bills of large denominations. The robber wore gloves, had a ski mask over his head, carried a green trash bag, and held a .22 caliber rifle in his right hand. Despite his instructions, the robber was given bills in one and five-dollar denominations.

Another witness, Ann Chenoweth, testified that approximately two weeks after her 8 April 1985 birthday, she saw Faulkner carrying a large wad of one and five dollar bills.

---

2. As we shall see, Tom Peavy was a participant in the 15 November robbery. He testified for the State and identified Faulkner as the robber. Faulkner disputed this identification.

Brian Corkery testified that, in the spring of 1985, Faulkner told him that he robbed a Safeway store. Detective Aquaviva, who investigated the Safeway robberies, testified that only one robbery occurred in the spring of 1985 at the store in Little Falls Mall.

Regarding the robbery for which Faulkner was convicted in this proceeding, the one occurring on Friday, 15 November 1985, Johnson testified that the robber had the same physical and behavioral characteristics as the robber on 19 April 1985. The robber again entered the store, climbed onto the same check-out stand, and demanded bills of large denominations. The perpetrator wore a blue denim mask, apparently cut from the leg portion of a pair of jeans. The mask was about a foot long and, with the exception of openings at his eyes, completely covered his face. He also wore gloves, carried a burlap sack, and was armed with a .22 caliber revolver. He carried the gun in his right hand. Again, despite his instructions to the contrary, the robber received mostly one and five-dollar bills. Three other Safeway employees testified that the robber was black and had the same build as Faulkner.

An accomplice to the 15 November robbery, Tom Peavy, testified that he acted as a look-out while Faulkner committed the robbery. Peavy's description of Faulkner's clothing matched the description given by Johnson. Peavy testified that Faulkner lived within five minutes walking distance from the Safeway, via a path through the woods.

Earl Carter, another Safeway employee, testified that on Friday, 10 January 1986, shortly after 9:00 p.m., a black male wearing a blue denim mask climbed onto a check-out stand and demanded large bills. Carter testified that the robber was in his twenties and stood between five feet ten inches and six feet. Further, the robber carried a plastic bag and held a .22 caliber handgun in his right hand. Carter, who was shot in the neck by the perpetrator, testified that he had seen Faulkner in the store over one hundred times. He said that the robber's voice and physical build were similar to that of Faulkner. Carter identified a

gun and a jacket, both found in the woods near Faulkner's home, as being similar to those used by the robber. Once again, on this occasion, the robber received mostly one and five-dollar bills.

Another witness for the State, Jamie Vermilye, testified that on the evening of 10 January, he saw an account of the Safeway robbery on the television news. Later that night he met Faulkner at the home of Robert Taylor. Faulkner paid Vermilye ten dollars that he owed to him. Vermilye testified that Faulkner paid the money from a sock which contained about fifty one-dollar bills; further, the serial numbers on the one-dollar bills paid to Vermilye were in sequential order.

Robert Taylor and Ann Chenoweth both testified that later, on the night of 19 January, they accompanied Faulkner when he spent between $300 and $400, all of which was in one and five-dollar denominations. Upon their inquiry, Faulkner told them that the money came from an easy place—a place he had "hit" on a previous occasion. Taylor also testified that approximately two months before this January night, sometime in November, he and Chenoweth had accompanied Faulkner when he also spent about $300 in one and five-dollar denominations.

Finally, a handgun recovered from the woods near Faulkner's home was identified by Earl Carter and Stephen Johnson as being similar to the one used by their assailant. Brian Corkery identified the gun as similar to one he had seen in Faulkner's possession in October 1985. Larry Faulkner, the respondent's brother, testified that the gun was similar to one he had urged his brother to "get rid of" shortly after the 10 January 1986 robbery.

### A. The Identity Exception

[E]vidence of other offenses may be received under the identity exception if it shows any of the following:

> (a) the defendant's presence at the scene or in the locality of the crime on trial;

(b) that the defendant was a member of an organization whose purpose was to commit crimes similar to the one on trial;

(c) the defendant's identity from a handwriting exemplar, 'mug shot,' or fingerprint record from a prior arrest, or his identity through a ballistics test;

(d) the defendant's identity from a remark made by him;

(e) the defendant's prior theft of a gun, car or other object used in the offense on trial;

(f) that the defendant was found in possession of articles taken from the victim of the crime on trial;

(g) that the defendant had on another occasion used the same alias or the same confederate as was used by the perpetrator of the present crime;

(h) that a peculiar *modus operandi* used by the defendant on another occasion was used by the perpetrator of the crime on trial;

(i) that on another occasion the defendant was wearing the clothing worn by or was using certain objects used by the perpetrator of the crime at the time it was committed;

(j) that the witness' view of the defendant at the other crime enabled him to identify the defendant as the person who committed the crime on trial.

*Cross,* 282 Md. at 477–478, 386 A.2d at 763 [citation and footnote omitted]; *see generally* McLain, *supra,* § 404.11. Most relevant to this case is *modus overandi,* paragraph (h) above. Also applicable, however, are paragraphs (a), (d), (f), (i), and (j).

In order to establish *modus operandi,* the other crimes must be " 'so nearly identical in method as to earmark them as the handiwork of the accused.... The device [used to commit the crime] must be *so unusual and distinctive* as to be like a signature.' " *McKnight v. State,* 280 Md. at 613, 375 A.2d at 556 (quoting C. McCormick,

*Evidence* § 190, at 479 (2d ed. 1972)) [emphasis in original]. *See generally* C. McCormick, *supra,* § 190, at 559–560.

It is argued here that each characteristic of the method used in the Safeway robberies is unremarkable when considered separately. It is not surprising that a robber would wear a mask and gloves (albeit a very distinctive mask), arm himself with a handgun, and carry a bag to make off with the fruits of his crime. Also, the manner in which he confronted the Safeway employees by jumping on the check-out stand and demanding large denominations of bills is not unique. But this evidence should be considered as a whole, instead of as a set of unrelated parts.

The proper approach was explained by the Court of Special Appeals in *Moore v. State, supra.* There, the intermediate appellate court held that certain common circumstances surrounding a number of sexual assaults were, when considered individually, "entitled to little or no weight" and did not establish a *modus operandi. Moore,* 73 Md.App. at 48, 533 A.2d at 6. *Moore* involved an assailant who committed three separate attacks. Each of the victims was encountered at the same time of day and approached and attacked in a similar manner. *Id.* at 48, 533 A.2d at 6–7. When considered together these unremarkable characteristics portrayed a specific *modus operandi. Id.; see also Nasim v. State,* 34 Md.App. 65, 366 A.2d 70 (1976), *cert. denied,* 279 Md. 684, 434 U.S. 868, 98 S.Ct. 209, 54 L.Ed.2d 146 (1977) (an unmistakable *modus operandi* emerged in a series of arson incidents).

Additional support for application of the *modus operandi* facet of the identity rule is found in the evidence that the perpetrator in each robbery was right handed and that each robbery occurred at approximately the same time on a Friday night. *Compare Faulkner v. State,* 73 Md.App. 511, 534 A.2d 1380 (1988). That case involved Faulkner's conviction of the 10 January 1986 robbery. The Court of Special Appeals held that evidence of the 15 November 1985 offense (the one before us now) was properly admitted to establish *modus operandi.* 73 Md.App. at 525, 534 A.2d at

1387. Similarly, we hold that the evidence before the court in the present case was sufficient to establish *modus operandi* and bring the case within the identity exception to the general rule.

## B. Involvement

■ The evidence in this case also establishes Faulkner's presence at the Safeway robberies. The testimony of witnesses to the effect that Faulkner's voice and physical characteristics were the same as those of the accused, along with the testimony regarding the identification of the handgun found near his house and the clothes he wore, bolster this proposition. The request for large bills in each instance also supports the State's contention that the same person committed the robberies in question. The testimony of witnesses regarding Faulkner's possession of large amounts of money in small denominations of bills also supports this contention. *See also Govostis v. State,* 74 Md.App. 457, 538 A.2d 338, *cert. denied,* 313 Md. 7, 542 A.2d 844 (1988) (defendant wore clothing similar to that worn by robber and he possessed a handgun similar to one used by the perpetrator; also witnesses placed defendant at the scene of the crime—other crimes evidence permitted to identify the accused); *Anaweck v. State,* 63 Md.App. 239, 492 A.2d 658, *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985) (evidence permitted to identify sellers of cocaine, on previous occasions, as the possessors of cocaine at a future occasion). Based on the testimony produced by the State, we believe that Faulkner's agency in the 19 April 1985 and 10 January 1986 robberies was established by clear and convincing evidence.

## C. Need; Probative Effect v. Prejudicial Impact

Nevertheless, it bears repeating
that, though the evidence may fall within one or more of the exceptions, the trial judge still possesses discretion as to whether it should be received. In the judicious determination of this issue he should carefully weigh the *necessity for* and probativeness of the evidence concern-

ing the collateral criminal act against the untoward preju-
dice which is likely to be the consequence of its admis-
sion.

*Cross,* 282 Md. at 474, 386 A.2d at 761 [citations omitted;
emphasis added]; *see generally* C. McCormick, *supra,*
§ 190, at 565; L. McLain, *supra,* § 404.5, at 355.

Thus, "other crimes" evidence, even though independent-
ly and substantially relevant to some contested issue, may
be excluded if its probative value is exceeded by potential
jury hostility or unfair prejudice. The leeway of this discre-
tion lies in the direction of excluding otherwise admissible
evidence. *See Moore,* 73 Md.App. at 44–45, 533 A.2d at 5;
*Brafman v. State,* 38 Md.App. 465, 476, 381 A.2d 687, 693
(1978). A decision to admit other crimes evidence which is
clearly incorrect " 'on this question of balancing probative
value against danger of prejudice will be corrected on
appeal as an abuse of discretion.' " *Brafman* at 476, 381
A.2d at 693 (quoting C. McCormick, *Evidence* § 190, at 454
(2d ed. 1972)).

In their analysis of the prejudicial impact—probative val-
ue test, the parties differ sharply as to the proper construc-
tion of the phrase "necessity for" as used in *Cross, supra.*
This is a question we have not previously had occasion to
address.

██ The State contends that this phrase is synonymous
with "material," and that any evidence which bears upon a
disputed issue in the case is "necessary." In contrast,
Faulkner asserts, in oral argument, that other crimes evi-
dence is "necessary" only "in extremely compelling circum-
stances" and "when there is a shortfall on the State's case."

Two Court of Special Appeals cases seem to support
Faulkner's contention. In *Faulkner, supra,* the court not-
ed that "[i]n balancing the need for the other crime evi-
dence, consideration is also given to whether, absent the
other crime evidence, the State would have failed to per-
suade a jury unanimously and beyond a reasonable doubt
that defendant was guilty of the crime for which he was on

trial." *Faulkner,* 73 Md.App. at 522–523, 534 A.2d at 1385 (citing *Anaweck,* 63 Md.App. at 255, 492 A.2d at 666–667). The *Faulkner* court held that because the State might not otherwise have met its burden of persuasion in establishing the defendant's guilt, the "other crimes" evidence should be admissible. *Id.* at 525, 534 A.2d at 1387. *Accord Anaweck,* 63 Md.App. at 255, 492 A.2d at 666–667.

We decline to accept either of these proposed interpretations of "necessity." Further, *Faulkner* and *Anaweck* are errant to the extent they purport to hold that a trial court must consider whether the State will or will not meet its burden of persuasion when weighing prejudice against probative value.

Adoption of Faulkner's proposed interpretation would result in substantial erosion of the exceptions to the general rule that "other crimes" evidence must be suppressed. The exceptions exist to allow otherwise inadmissible evidence into a case when it is independently and substantially relevant to a contested issue in the case. Rarely will there be the "compelling need" which Faulkner asserts is the threshold to admitting such evidence. The State's proposal, on the other hand, would virtually eliminate the general prohibition against the admission of "other crimes" evidence. Its argument fails to recognize that in many cases the State's evidence may be so cumulative or superfluous that it is properly excluded on that ground. In these situations the prejudicial impact of other crimes evidence would exceed its probative value.

▇▇▇▇ In this case most of the State's evidence regarding the 15 November 1985 robbery is circumstantial. The only direct evidence, from Faulkner's accomplice, Peavy, must be corroborated, because a conviction cannot stand on the uncorroborated testimony of an accomplice. *Turner v. State,* 294 Md. 640, 641–642, 452 A.2d 416, 417 (1982); *Brown v. State,* 281 Md. 241, 246, 378 A.2d 1104, 1108 (1977). This corroborative evidence, including the "other crimes" evidence, is not merely cumulative in establishing

Faulkner's guilt. It was reasonably necessary and served an appropriate probative purpose. In other words, it did more than suggest to the jury that Faulkner was a bad man or had a propensity to commit crimes. It was not an abuse of discretion for Judge Raker to admit evidence of the 19 April 1985 and 10 January 1986 robberies on the limited issue of identity, a limitation she carefully explained to the jury.[3]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.

COLE, Judge, dissenting.

The majority today holds that in this case evidence of other crimes is admissible to prove the defendant's guilt of the crime charged. I disagree and therefore dissent.

The general rule in Maryland is that prior criminal acts of a defendant are inadmissible when offered to prove culpability for the charged offense. Our cases unmistakably establish this premise. However, we have developed several limited exceptions to the rule, allowing the evidence to be admitted for a purpose other than to show the criminal character of the accused. We admit such evidence when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the com-

---

**3.** Generally, in its discretion, the trial court may admit portions or all of the other crimes evidence, depending upon its probative value and the prejudice involved in its admission. *See Cross v. State,* 282 Md. 468, 474, 386 A.2d 757, 761 (1978). In this case, the shooting of Safeway employee Earl Carter, by the perpetrator of the 10 January 1986 robbery, appears to be highly prejudicial. However, at trial defense counsel did not propose that this evidence be excluded, nor did he point out its especially prejudicial aspects. Because an appellate court will ordinarily not decide an issue not raised at trial, we decline to address whether this portion of the other crimes evidence should have been excluded. *See* Md. Rule 8–131(a) (Supp.1988).

mission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. *Straughn v. State,* 297 Md. 329, 333 & n. 3, 465 A.2d 1166, 1169 & n. 3 (1983); *State v. Jones,* 284 Md. 232, 238, 395 A.2d 1182, 1185–86 (1979); *Cross v. State,* 282 Md. 468, 473, 386 A.2d 757, 761 (1978); *McKnight v. State,* 280 Md. 604, 612–13, 375 A.2d 551, 556 (1977); *Ross v. State,* 276 Md. 664, 669–70, 350 A.2d 680, 684 (1976).

The majority seems to hold that in this case the other crimes evidence is admissible under the identity or "earmark" exceptions as showing the defendant's *modus operandi.* However, I remain unpersuaded that the probative value, the necessity for, and the clarity of the evidence outweigh the great prejudice inflicted upon the defendant.

As I see it, this attempt to fit the "other crimes" evidence into the identity or *modus operandi* exception is misplaced. If the evidence is entitled to be admitted, it should be supported by clear and convincing proof that the other Safeway robberies are "so nearly identical in method as to earmark them as the handiwork of the accused." *Ross, supra,* 276 Md. at 670, 350 A.2d 680. A very substantial degree of similarity between the charged crime and the uncharged crime is required to prove identity. There should be some uniqueness in the modus and a concurrence of distinctive facts before such collateral evidence is admitted. Mere similarity should never be sufficient.

We said in *Cross, supra,* 282 Md. at 478, 386 A.2d 757, that such evidence, to be admissible, must clearly and convincingly prove a defendant's involvement in the other crimes. Here, I am convinced that evidence of the other Safeway robberies is anything but clear and convincing, certainly not so unique or strikingly similar as to suggest a signature quality to the crimes and to unmistakably identify Faulkner as the culprit.

The State's primary evidence tended to establish that the perpetrator of the other robberies had similar "build, man-

nerisms, and language" to that of the defendant; that Faulkner had spent large sums of money similar in denomination to that stolen; that Faulkner had indicated his involvement in a robbery of an *unidentified* Safeway on an *unspecified* date in the spring of 1985; and that Faulkner had boasted that he had "hit" a place on at least two occasions.

The true test, as unequivocally articulated in *Ross* and its progeny, requires the separate crimes to display a unique signature quality. Clearly, the evidence here does not meet that test. Significantly, the November 15, 1985, robbery was committed by an assailant brandishing a .22 caliber revolver, carrying a burlap sack, and wearing a blue denim mask. The perpetrator of the April 19, 1985, crime wore a ski mask, carried a green trash bag, and used a .22 caliber rifle. The January 10, 1986, robbery was committed by an assailant who wore a blue denim mask, carried a plastic bag, and used a .22 caliber handgun. Any mere similarity existing between the crimes is of insufficient strength to trigger the identity exception.

Even were I to ignore the impropriety of admitting the evidence to prove identity, I nonetheless must acknowledge the untoward prejudice occasioned by apprising the jury of the January 10th crime. That incident involved the shooting of a Safeway employee. The mere suggestion that Faulkner committed that heinous act clearly was enough to outweigh the evidence's probative value and was fraught with such prejudice as to not even necessitate a separate objection on this ground by the defendant. In my view, the other crimes evidence should have been excluded as to both the April robbery for its clear dissimilarity and the January crime for its inherent prejudice.

For these reasons, I agree with the Court of Special Appeals and would reverse the judgment of the Circuit Court for Montgomery County.

Judges ELDRIDGE and BLACKWELL have authorized me to state that they join in the views expressed in this dissenting opinion.