518 A.2d 733

**ANNE ARUNDEL COUNTY, Maryland**

v.

**Peter CHU, et al.**

**No. 511, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 6, 1987.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Mark D. McCurdy, Asst. Atty. Gen., Baltimore, and Philip Caroom, Asst. State's Atty. for Anne Arundel County, Annapolis, Md., on brief), for appellant.

Daniel F. Goldstein (Elizabeth M. Kameen, Andrew Radding and Blades & Rosenfeld, P.A., on brief), Baltimore, for appellees.

Argued before MOYLAN, BELL (ROSALYN B.) and POLLITT, JJ.

MOYLAN, Judge.

The decision of the Circuit Court for Anne Arundel County, which we hereby reverse, went wrong in many different ways. The three appellees, Nancy Chu, Peter Chu, and the Odenton Dental Care Clinic, succeeded in having the trial judge impose sanctions for the violation of a statute, Article 27, § 551, when the terms of the statute had never been violated. The statute was treated as tantamount to the Fourth Amendment to the United States Constitution, the provisions of which were not yet ripe for invoking quite aside from the fact that they bore little relationship to the Maryland statute. The appellant, Anne Arundel County, has brought the present appeal.

The Anne Arundel County Police Department was investigating the possibility that the appellees were perpetrating a fraud on the State of Maryland by billing Maryland Blue

Cross/Blue Shield for dental work which had, in fact, never been done. In furtherance of that investigation, Detective David H. Cordle applied for a search and seizure warrant to seize various records in the possession of the appellees. There is no question but that the application for the warrant, detailing initial complaints about improper billing from the Massachusetts Mutual Life Insurance Company and the results of an extensive audit of the appellees conducted by Maryland Blue Cross/Blue Shield, contained abundant probable cause to believe that evidence of crime would be found in the records of the dental care clinic. The warrant was signed by Judge Bruce C. Williams and the search was executed.

On the very day that the search took place, before a grand jury had considered any of the evidence and before any criminal charges were brought against any of the appellees, the appellees moved for a return of the seized property under the provisions of § 551.

Although redress was formally sought under the very specific and very limited provisions of a Maryland statute, all parties charged pell-mell into an utterly inappropriate constitutional battle over the provisions of Fourth Amendment search and seizure law. The argument put forth by the appellees took no note of the many opinions of the Court of Appeals and of this Court over the last four years that have discussed at great length the minimal resemblance between § 551 and the Fourth Amendment. *State v. Intercontinental, Ltd.*, 302 Md. 132, 486 A.2d 174 (1985); *Director of Finance v. Cole*, 296 Md. 607, 647, 465 A.2d 450 (1983) (concurring and dissenting opinion by Eldridge, J.); *In Re Special Investigation No. 228*, 54 Md.App. 149, 458 A.2d 820 (1983); *Howell v. State*, 60 Md.App. 463, 483 A.2d 780 (1984).

The appellees brought a civil suit for the return of personal property. At the trial below and in both brief and argument before us, however, their argument and their supporting authority deal exclusively with the doctrine of

excluding evidence from a criminal case because of a violation of the Fourth Amendment. In scrambling two essentially distinct problems, each with its own distinct remedy, the appellees neglected what we pointed out in *In re Special Investigation No. 228, supra,* to be:

"[T]he frequently neglected point that personal property law is not coterminous with constitutional law—that the entitlement to have personal property (which may coincidentally be evidence) returned is not coterminous with the right to have excluded from one's criminal trial evidence (which may coincidentally be one's personal property)."

54 Md.App. at 152, 458 A.2d 820. We pointed out, at the very outset of that opinion, that "the property right and the constitutional right have available separate avenues of vindication." *Id.* We repeat here what we said there, "This appeal arises from a blurring of that distinction." *Id.*

We turn our attention initially to what should have been the only issue in this case—whether, under the explicit provisions of § 551, the appellees were entitled to the return of the seized records. In looking only at the unambiguous terms of the statute and not at the vast and extrinsic baggage of Fourth Amendment law, we are conscious of the distinction we sought to draw so carefully in *In re Special Investigation No. 228, supra:*

"[A] close reading of § 551 side by side with the Fourth Amendment yields dozens of major and minor distinctions that are heedlessly plastered over by the slapdash assumption that the Maryland statute is neither more nor less than a legislative embodiment of *Mapp v. Ohio.* What emerges from the analysis is that the federal Exclusionary Rule and the Maryland statute, though overlapping minimally as they touch probable cause and possibly particularity of description, are totally divergent remedies, with vastly diverse histories, serving completely different purposes, utilizable at significantly different stages of legal proceedings, available to different classes

of litigants with different problems, and emanating from separate sovereigns." (Footnote omitted).

54 Md.App. at 176–177, 458 A.2d 820.

Subsection (a) of § 551 deals with the sanction of ordering that the seized property "be restored to the person from whom it was taken" in certain instances of noncompliance with the requirements of the section. Three times, it spells out with exactitude the three situations that will trigger its sanction of causing the property to be restored. Two of those situations, not here pertinent, deal with flaws not in the issuance of a warrant but in the execution of the warrant.[1] The only triggering condition for the sanction remotely applicable in this case is:

"If, at any time, on application to a judge of the circuit court of any county ... it appears ... that there is no probable cause for believing the existence of the grounds on which the warrant was issued, ... said judge must cause it to be restored to the person from whom it was taken."

■ Probable cause is substantive in nature. Its measurement is unaffected by the propriety or impropriety of the methods employed to gather the probable cause. In this case, it is beyond dispute that the application for the search and seizure warrant established bountiful probable cause to believe that the records of the dental care clinic might well contain evidence of fraud. The application recited a number of instances of demonstrated false claims for work that was never done. Indeed, the appellees do not argue here and did not argue below that probable cause, as a quantitative thing, was not established. The trial judge neither found nor obliquely indicated that probable cause was not established. The trial judge nonetheless ordered the seized property to be restored to the appellees, and this

---

**1.** One of those situations is where it appears that the property taken is not the same as that described in the warrant. The other is where the property was taken under a warrant issued more than fifteen calendar days prior to the seizure.

appeal has been taken from that order. At the simplest level, we reverse the decision of the trial court because the only pertinent condition spelled out by § 551(a) for applying its sanction of restoring the seized property was not remotely satisfied.

■ The future guidance of bench and bar, however, compels us to attempt some analysis of how this litigation went so far astray. Everyone treated the § 551 motion in this case as tantamount to an invocation of the Fourth Amendment's Exclusionary Rule of *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In grafting the whole body of Supreme Court law dealing with that subject onto the Maryland statute, the theory was advanced that the probable cause set out in the application for the warrant was the "fruit of the poisonous tree." *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). It was argued that the audit of the appellees by Blue Cross/Blue Shield was a subterfuge undertaken at the request of the Anne Arundel County Police Department and that the consent ostensibly given by the appellees to the Blue Cross/Blue Shield auditors was vitiated by the failure of the auditors to inform the appellees of the true purpose of the audit. With the support somehow of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the trial court found that the search warrant was the tainted product or exploitation of the primary illegality. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). What everyone neglected to notice was that none of this has anything to do with § 551.

Section 551 does not remotely involve, explicitly or implicitly, the Exclusionary Rule of evidence. It is not *in pari materia* with either the Federal Fourth Amendment or Article 26 of the Maryland Declaration of Rights. In tracing its history and development exhaustively in *In re Special Investigation No. 228,* at 54 Md.App. 159–177, 458 A.2d 820, we pointed out that it was first enacted by the General

Assembly in 1939, as a specific provision of law under the subtitle "Gaming." Its purpose was not to vindicate constitutional liberties but to determine who got to keep the cash following police raids on bookmaking parlors and lottery headquarters.

The divergences between the Exclusionary Rule and § 551 are legion. The Exclusionary Rule deals exclusively with matters of constitutional dimension; § 551 deals in significant part with infractions that are of less than constitutional stature. The Exclusionary Rule concerns only improper searches and seizures; two of the three situations in which § 551 requires the return of seized property concern proper searches and seizures. The Exclusionary Rule deals with warrantless searches as well as with those conducted under authority of a warrant; § 551 deals only with searches executed under a warrant. It does not have the remotest bearing upon warrantless searches, be they legal or illegal, constitutional or unconstitutional.

The Exclusionary Rule is not remedial in intent but serves a prophylactic purpose of general deterrence, aimed at curbing future police misconduct, *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); § 551 is exclusively remedial in purpose and is concerned with restoring a right of possession to one wrongfully deprived of that right. The Exclusionary Rule covers such intangibles as things seen or conversations overheard, *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); § 551 covers only goods and chattels.

The Exclusionary Rule bans unconstitutionally seized contraband as well as any other variety of evidence, *Warden v. Hayden,* 387 U.S. 294, 307–308, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782, 792 (1967); § 551 does not compel the return of contraband, no matter how unconstitutional or otherwise illegal its seizure may have been, *Board of Police Commissioners v. Wagner,* 93 Md. 182, 48 A. 455 (1901), and *Wagner v. Upshur,* 95 Md. 519, 52 A. 509 (1902).

One need not have a right to possess the chattel to have standing to invoke the Exclusionary Rule; it is enough to have been legitimately present on someone else's premises, *Cecil Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); it is enough to have a possessory interest in the place searched even without a possessory interest in the thing seized. By way of contrast, one's entitlement to invoke § 551 depends upon the rightful possession of the personal property in question.

The appellees in this case are obviously not concerned with the replevin of personal property as such. They are concerned with the potential use of the data contained in the files as proof of guilt in some possible future criminal trial. For that purpose, the limited sanction available under § 551, even if it had been properly invoked, would be of little utility to them. Even a return of the personal property under § 551 would not preclude the State from making copies of the files, prior to their return, and then using the secondary evidence at a criminal trial. In our earlier analysis, we stated as clearly as we knew how the utter lack of any connection between the "fruit of the poisonous tree" doctrine and § 551:

> "The Exclusionary Rule forbids derivative use under the 'fruit of the poisonous tree' doctrine, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *§ 551* mandates only the return of possession and *has no concern with derivative use.*" (Emphasis added).

54 Md.App. at 158, 458 A.2d 820. The Fourth Amendment, of course, might preclude such derivative use. Then, again, it might not. The Fourth Amendment, however, is not yet in the case. The Exclusionary Rule regulates only the admissibility of evidence at a criminal trial. *Warden v. Hayden,* 387 U.S. 294, 305, 87 S.Ct. 1642, 1649, 18 L.Ed.2d 782, 791 (1967). No criminal charges have been brought against anyone as a result of this investigation. There is pending no criminal case.

■ The non-ripeness of this search and seizure for scrutiny under the Fourth Amendment is highlighted by the fact that it is impossible to determine who, if anyone, has standing to raise a Fourth Amendment issue. One has standing to invoke the Exclusionary Rule only as a defendant in a criminal case. *United States v. Salvucci*, 448 U.S. 83, 86–88, 100 S.Ct. 2547, 2550–51, 65 L.Ed.2d 619, 624–625 (1980). Thus, one whose personal property is unconstitutionally seized has no standing where the seized property is used against someone else. *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). Here, for instance, we have no way of knowing whether even a hypothesized criminal defendant would be Dr. Peter Chu; Dr. Nancy Chu; Chu and Chu, Professional Associates; and/or the Odenton Dental Care Clinic. Until that threshold determination is made, there is literally no way of determining who, if anyone, would have standing to invoke the Fourth Amendment's Exclusionary Rule.

Even assuming, *arguendo*, a Fourth Amendment violation, to what would even a hypothesized defendant with standing be entitled? The Exclusionary Rule would entitle the defendant to have unconstitutionally seized evidence excluded from the State's case-in-chief on the merits of guilt or innocence. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). One would not, however, be entitled to have the evidence excluded from a civil trial, *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); one would not be entitled to have the evidence excluded from a grand jury, *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); one would not be entitled to have the evidence excluded when it is offered in rebuttal for purposes of impeaching the defendant's testimonial credibility, *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), and *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). It is clear beyond all argument that possible applications of the Exclusionary Rule can only be determined at a criminal trial once the defendants are known and once it is

known for what purpose the State is seeking to use even unconstitutionally seized evidence.

The legislative history of § 551, moreover, reveals the utter lack of any connection between its purpose and the purpose served by the Exclusionary Rule. When § 551 was first enacted [2] in 1939, Maryland had no Exclusionary Rule except for the limited utility of the Bouse Act [3] to trials of the less significant misdemeanors. *Marshall v. State,* 182 Md. 379, 35 A.2d 115 (1943); *Delnegro v. State,* 198 Md. 80, 81 A.2d 241 (1951). Maryland, for that matter, has no Exclusionary Rule of its own to this very day.

The unconcern of § 551 with constitutional rights in the search and seizure area, moreover, is underscored by the fact that two of the three situations calling for the return of property under § 551(a) do not involve improper searches and seizures at all. They are concerned, rather, with the time at which even properly seized property should be returned following *nol-prosses,* acquittals, convictions, etc. It is even more manifest that § 551 does not seek to provide a protection against unreasonable searches and seizures generally, for the overwhelming majority of improper searches and seizures (the warrantless ones) are simply not covered by the law.

The "clincher" for the proposition that § 551 does not contain, explicitly or implicitly, an Exclusionary Rule is the fact that an effort was made to engraft an exclusionary rule onto § 551 in 1958 and was rejected by the Legislature. As we pointed out in *In re Special Investigation No. 228, supra,* at 54 Md.App. 163, 458 A.2d 820:

> "The amendment of the law in 1958 was significant not so much for the minor stylistic changes which it made but for other proposed changes which it did not make. The original version of House Bill 37 proposed for the first

---

2. By Ch. 749 of the Acts of 1939. It was then codified as Article 27, § 259A.

3. Ch. 194 of the Acts of 1929.

time a broad exclusionary rule for Maryland, not limited in its coverage as was the Bouse Act and anticipating *Mapp v. Ohio* by a full three years. The proposed amendment provided that a search in violation of § 551 or an unconstitutional search generally would result in the suppression of the evidence produced. The proposed exclusionary rule would have dealt with 'unlawful' searches as well as with unconstitutional searches. It would, moreover, have dealt with warrantless searches and seizures as well as with defects in the issuance or execution of warrants. Significantly, for the reading of legislative intent, all of these proposed changes were struck from the bill prior to its enactment." (Footnotes omitted).

In this case, the appellees brought their cause of action under a very specific statute. The State, at the trial level and at the appellate level, defended against that statute. Under the circumstances, all parties should read the statute carefully. They should be aware of its history and purpose. They should ascertain the standing qualifications for invoking the statute. They should determine what specific remedies are available for what specific breaches. Instead, everyone made the blind assumption that § 551 was nothing more than the Maryland "buzz word" for the Fourth Amendment and its Exclusionary Rule, with no basis whatsoever for making such an assumption.[4] It was a leap of faith on the part of the appellees and the appellant leaped with them.[5]

---

**4.** When this Court has devoted a 52–page opinion to analyzing, parsing, and scrutinizing a statute upside down, rightside up, and inside out, and that opinion is, moreover, squarely dispositive of the case brought under that statute a bare three years later, it is extremely exasperating to find that no party to the case seems aware that such an opinion even exists.

**5.** Even were we to assume, *arguendo*, 1) that this case had been brought under the Fourth Amendment and its Exclusionary Rule, 2) that criminal charges had been lodged, and 3) that the appellees were criminal defendants with standing to object, reversal would still be

called for. Earlier Maryland law to the effect that the review of an application for a search warrant should be confined to the material contained within "the four corners" of the application itself had to do only with the question of probable cause, not with the question of "taint." Extrinsic evidence was not admissible from the hands of the State to supplement probable cause or from the hands of the defendant to derogate from probable cause. Probable cause would be judged solely on the basis of the data written down as part of the application for the warrant.

The "fruit of the poisonous tree" doctrine, generally, and the case of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), specifically, created a limited exception to this "four corners" doctrine. Where it is alleged that the probable cause is the tainted fruit of an earlier constitutional breach or where it is alleged that the probable cause is based upon police perjury, a hearing, under limited circumstances, must be conducted to explore whether those allegations are true. There is absolutely no law to the effect that a determination of taint will be made by confining the scrutiny to data contained in the warrant application itself. The defendant should have an opportunity to establish the earlier taint and the State should have the opportunity to rebut it.

In the case before us, for instance, the appellees were permitted to prevail upon their proffer that none of them validly consented to the earlier audit without ever testifying to the fact that their apparent consent was based upon their lack of knowledge as to the true purpose of the audit. Equally fatal to the procedure utilized, the State was never permitted to introduce evidence to the contrary.

It may well have been the case that there was nothing improper about the police suggesting to Blue Cross/Blue Shield the target of an audit, so long as the target is eligible for auditing. It may have been the case that the appellees in this case were not entitled to keep these "public records" shielded from the scrutiny of the State in any event. It may have been the case, as an affidavit submitted by the State alleges, that a perfectly proper audit by Blue Cross/Blue Shield was already in progress and the State simply took the opportunity "to piggyback" upon it. The State, however, was summarily precluded even from offering evidence on these issues.

*Franks v. Delaware, supra,* establishes, moreover, that even when tainted information is contained in a warrant application, the remaining untainted information (such as the allegations received from the Massachusetts Mutual Life Insurance Company) still must be appraised to see whether it alone might suffice to establish probable cause. *Franks v. Delaware,* upon which the appellees rely so heavily, goes on to limit the basis for overturning a warrant to an actual instance of police perjury. There is no remote suggestion of police perjury in this case.

Nor could the procedure employed in this case surmount the hurdle of the "good faith" exception to the Exclusionary Rule spelled out by *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). The appellees seek to utilize *Franks v. Delaware* to avoid the foreclosing effect of *Sheppard* and *Leon,* conveniently

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEES.

ignoring the fact that the police perjury hypothesized by *Franks v. Delaware* would, *ipso facto,* be bad faith within the contemplation of *Sheppard* and *Leon.* But it is pointless to go on cataloging the many ways in which the procedure employed herein would have run afoul of Fourth Amendment law, when the Fourth Amendment was not even properly before the court in this case.