759 A.2d 1164

**Stephen HILL**

**v.**

**STATE of Maryland.**

**No. 1023, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Sept. 29, 2000.

328

330

332

Victoria Lansburgh, Asst. Public Defender, (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Celia Anderson Davis, Asst. Atty., General (J. Joseph Curran, Jr., Atty. General, Baltimore and Jack Johnson, State's Atty., for Prince George's County of Upper Marlboro, on the brief), for appellee.

Submitted before SALMON, BYRNES, and PAUL E. ALPERT (Ret'd, Specially Assigned), JJ.

BYRNES, Judge.

Appellant, Stephen Hill, was charged with first and second degree assault, use of a handgun in commission of a crime of violence, and carrying a handgun. A jury sitting in the Circuit Court for Prince George's County found him guilty of second degree assault. Appellant was sentenced to five years incarceration with all but two years suspended. This sentence was later reduced to eighteen months, to be served on home detention.

On review, appellant presents the following questions, which we have rephrased slightly:

I. Did the motion court err in failing to suppress the items seized from appellant's home?

II. Did the trial court abuse its discretion in denying appellant's motion for mistrial?

III. Did the trial court abuse its discretion in admitting "other crimes" evidence?

IV. Was the evidence sufficient to sustain appellant's conviction?

For the reasons that follow, we shall affirm the judgments.

## FACTS AND PROCEEDINGS

On September 4, 1998, appellant purchased a 9 millimeter handgun from the Sports Authority, a store located in Green-

belt. Approximately five weeks later, appellant used a gun in an attempt to force his mathematics instructor at the University of Maryland into giving him an "A" for the course.

Alvaro Alvarez–Parrilla (Alvarez), appellant's instructor, shared an office in the Mathematics Building at the University of Maryland with Casey Cremins. At trial, Cremins testified that on October 12, 1998, at approximately 12:00 p.m., he and Alvarez were in their office when appellant knocked on the door, entered, and asked Cremins if he would excuse them. Alvarez began to protest, but Cremins stated that he had to leave anyway and then departed.

Cremins returned to the office approximately fifteen minutes later and found the door closed. He knocked and, hearing no reply, opened the door. Appellant and Alvarez were still in the office. Cremins asked if they needed more time. Both men indicated that they did. Cremins again left the office. He returned approximately one-half hour later, and found the office empty.

Alvarez testified that at the time of the incident he was a graduate student and teaching assistant at the University. Appellant was a student in one of his mathematics classes. Alvarez stated that on Wednesday, October 7, 1998, he gave a midterm examination, which appellant missed. That Friday, following the class in which Alvarez returned the exams, appellant approached Alvarez and stated that he had missed the midterm examination and that he needed to talk to him. Alvarez told appellant to go ahead and tell him about it, but appellant responded that he wanted to speak with Alvarez at a later time. Alvarez told appellant that he could come to his office on the following Monday, October 12.

On October 12, at approximately 12:15 p.m., appellant came to Alvarez's office. Alvarez testified that his office mate, Cremins, also was present and that appellant asked Cremins to step outside. Alvarez stated that he did not think that it was proper for appellant to ask Cremins to leave his own office. For that reason, he told appellant that if they needed

to discuss a personal matter, they would go elsewhere. Cremins then stated that he would leave the office.

Alvarez offered appellant a seat and asked him what the problem was. According to Alvarez, appellant stated that he did not want Alvarez "to be upset or surprised[,]" but that either Alvarez was going to give him an "A" in the course or appellant would kill him. As appellant spoke, he raised his jacket to reveal a pistol hanging in a holster. Appellant then let the jacket drop. Alvarez testified, "I feared for my life immediately." Appellant repeated that Alvarez would give him an "A" for the class or he would kill Alvarez. Appellant also stated that if Alvarez went to the police or to anyone else, appellant would dismember him and dump his remains in the river. Alvarez testified that appellant "went on and on about the details of how he would get rid of my body."

At first, Alvarez responded by telling appellant that he could not give him a specified grade in the course because he was only a teaching assistant and others also were responsible for grading the course work. Alvarez explained that he was trying to distance himself, in appellant's mind, from the responsibility for grading the course because he was in fear for his life. Appellant asked Alvarez, "[S]o what is it that you want more, do you want your life or do you want to give me an A in the course?" When Alvarez inquired why appellant was doing this, appellant responded, "[T]his is the way we mobsters operate." Alvarez testified that appellant also stated that "he had decided to not do the course work and just take the easy way out and try to get his A through threatening me."

Alvarez testified that, at one point, Cremins returned to the office and Alvarez indicated to him that they were still busy. Alvarez explained that he did so because he was concerned for everyone's safety. He then decided that the best approach would be to accede to appellant's demands. He told appellant to take the examinations for the course, and that he later would change the grades to give him an A. Appellant agreed to that approach and then left the office.

Alvarez testified that he was afraid to call the police right away because he did not know if appellant was waiting outside his door. Alvarez waited a while and then gathered up his books as if he were going to class. Instead, he went to see Dr. Scott Wolpert, the undergraduate chairman. When Alvarez told Wolpert that a student had threatened him with a gun, Wolpert called the police.

The University of Maryland Police arrested appellant on October 14, 1998, as he drove toward the campus. In a search incident to the arrest, the police recovered ten rounds of 9 millimeter ammunition from appellant's front pants pocket. Appellant told the officers that he also had a weapon in the vehicle. From the front passenger seat, the police recovered a gym bag, which contained a gun box. A 9 millimeter semi-automatic pistol was in the gun box. The pistol contained a fully loaded magazine. Three spare magazines, also fully loaded, were in the gun box.

On the same date, a search warrant was executed at appellant's residence. Among the items seized from appellant's bedroom were ammunition for a 9 millimeter handgun and a holster.

Appellant testified in his own defense. He stated that he had asked to meet with Alvarez to discuss the examination that he had missed and that they agreed to meet in Alvarez's office on Monday, October 12. Appellant went to Alvarez's office at the appointed time and found Alvarez and Cremins there. Appellant testified that he asked if he could speak with Alvarez in private. Alvarez responded that the request was not appropriate, because the office belonged to Cremins as well. Cremins left the office anyhow, and appellant sat down.

According to appellant, Alvarez engaged him in small talk. Appellant then mentioned that he had missed the previous examination and said that he did not have a documented excuse. He asked Alvarez whether there was any way he could receive extra credit or make up the exam. Alvarez replied by saying that he wanted oral sex in exchange for the extra credit. Appellant told Alvarez that he was "straight"

and that he had "no interest in that type of behavior." Alvarez then told him that he would fail the course, to which appellant replied, "I own a nine millimeter and if you try that I will shoot you." Appellant also told Alvarez that he was going to withdraw from the course. He then left the office. Appellant stated that he did not report what Alvarez had said to him because he was embarrassed about it.

## DISCUSSION

### I.

Appellant contends that the motion court erred in denying his motion to suppress the evidence seized from his residence because the University of Maryland Police lacked authority to search his home and the court failed to make adequate findings in support of its ruling. We will address each of appellant's contentions and set forth his arguments in further detail. We begin, however, by recounting the testimony taken at the hearing on appellant's motion.

### Standard of Review

In reviewing the denial of a motion to suppress, we consider only the record of the suppression hearing and not of the trial itself. *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749 (1987) (citing *Jackson v. State,* 52 Md.App. 327, 332 n. 5, 449 A.2d 438, *cert. denied,* 294 Md. 652 (1982)); *Aiken v. State,* 101 Md.App. 557, 563, 647 A.2d 1229 (1994), *cert. denied,* 337 Md. 89, 651 A.2d 854 (1995). We extend great deference to the fact finding of the suppression court and accept the facts as found, unless clearly erroneous. *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990); *Perkins v. State,* 83 Md.App. 341, 346–47, 574 A.2d 356 (1990). We must give due regard to the court's "opportunity to assess the credibility of the witnesses." *McMillian v. State,* 325 Md. 272, 282, 600 A.2d 430 (1992). In addition, we review the evidence in the light most favorable to the prevailing party, the State. *Riddick,* 319 Md. at 183, 571 A.2d 1239; *Cherry v. State,* 86 Md.App. 234, 237, 586 A.2d 70 (1991). Nevertheless, as to the ultimate, concluso-

ry fact of whether the search was valid, this Court must make its own independent constitutional appraisal by reviewing the law and applying it to the facts of this case. *Riddick,* 319 Md. at 183, 571 A.2d 1239; *Perkins,* 83 Md.App. at 346, 574 A.2d 356.

## The Hearing on the Motion to Suppress

Officer John Cassady of the University of Maryland Police obtained a search and seizure warrant for appellant's residence. The warrant was executed on October 14, 1998. According to Officer Cassady, appellant's residence was located in Riverdale, in Prince George's County, and not on the University campus. The officer also stated that as a member of the University of Maryland Police force, he had limited police authority in Prince George's County. Officer Cassady testified that any police authority he had in Riverdale came from the concurrent jurisdiction agreement between the University of Maryland Police and the Prince George's County Police Department. He was not sure of the extent of that agreement.

University of Maryland Police Detective Jeffrey Peters was one of the officers who executed the warrant at appellant's residence. Detective Peters seized the items from appellant's home and, on November 4, 1998, filed the return on the warrant. Detective Peters testified that appellant's mother was present when the warrant was executed and that Captain Givonsky, also of the University of Maryland Police, explained the warrant to her and gave her the property receipt.

Detective Peters further testified that Riverdale was not within the concurrent jurisdiction of the University of Maryland Police, and that two detectives from the Prince George's County Police Department had accompanied the University of Maryland Police to appellant's residence. The University of Maryland Police actually executed the warrant, however. The most recent agreement on concurrent jurisdiction between the Prince George's County Police Department and the University of Maryland Police force was admitted into evidence.

### Did the University of Maryland Police act without authority in obtaining and executing the search warrant for appellant's residence?

■ Appellant argues that the University of Maryland Police did not have authority to obtain or execute a search warrant in Riverdale, which was outside their concurrent jurisdiction. He maintains that the search warrant did not validly confer power to conduct the search on that police force. He further takes the position that because the University of Maryland Police actually conducted the search, seized the property, explained what was happening to appellant's mother, and filed the return, the search was under their personal and immediate direction. The Prince George's County detectives, while present, merely occupied a passive role, and their presence did not make the search authorized. Appellant argues that the procedure carried out in this case was contrary to the dictates of *Buckner v. State,* 11 Md.App. 55, 272 A.2d 828, *cert. denied,* 261 Md. 723 (1971).

The powers of the University of Maryland Police are set forth in Md.Code (1978, 1999 Repl.Vol.), § 13–601 of the Education Article ["Ed."], which provides, in part:

(b) *Powers.*—(1) A University of Maryland police officer is and has all the powers of a peace and police officer in this State.

(2) However, a University of Maryland police officer may exercise these powers only on property that is owned, leased, operated by, or under the control of the University of Maryland. The police officer may not exercise these powers on any other property unless:

(i) Engaged in fresh pursuit of a suspected offender;

(ii) Requested or authorized to do so by the chief executive officer or chief police officer of any county;

(iii) Necessary in order to facilitate the orderly flow of traffic to and from property owned, leased, operated by, or under the control of the University of Maryland; or

(iv) Ordered to do so by the Governor.

Under Md.Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Art. 27, § 551, (" § 551") a judge may "issue a search warrant directed to any duly constituted policeman, or police officer authorizing him to search." [1]

"The cardinal rule of statutory construction is to ascertain and carry out the intent of the legislature." *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448 (1994). "The starting point in statutory interpretation is with an examination of the language of the statute. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain

---

1. Article 27, § 551(a) provides in relevant part:

(a) *Applications, affidavits, and oral motions for search warrants.*— Whenever it be made to appear to any judge of any of the circuit courts in the counties of this State, or to any judge of the District Court, by written application signed and sworn to by the applicant, accompanied by an affidavit or affidavits containing facts within the personal knowledge of the affiant or affiants, that there is probable cause, the basis of which shall be set forth in said affidavit or affidavits, to believe that any misdemeanor or felony is being committed by any individual or in any building, apartment, premises, place or thing within the territorial jurisdiction of such judge, or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such building, apartment, premises, place or thing, then the judge may forthwith issue a search warrant directed to any duly constituted policeman, or police officer authorizing him to search such suspected individual, building, apartment, premises, place or thing, and to seize any property found liable to seizure under the criminal laws of this State, provided that any such search warrant shall name or describe, with reasonable particularity, the individual, building, apartment, premises, place or thing to be searched, the grounds for such search and the name of the applicant on whose written application as aforesaid the warrant was issued, and provided further that any search or seizure under the authority of such search warrant, shall be made within 15 calendar days from the date of the issuance thereof and after the expiration of the 15–day period said warrant shall be null and void. If, at any time, on application to a judge of the circuit court of any county or judge of the District Court, it appears that the property taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, or that the property was taken under a warrant issued more than 15 calendar days prior to the seizure, said judge must cause it to be restored to the person from whom it was taken. . . .

meaning, we will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204 (1994). Stated another way, "[w]hen the words of the statute are clear and unambiguous, we need not go further." *State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731 (1993). "But where a statute is plainly susceptible of more than one meaning, construction is required; in such circumstances, courts may consider not only the literal or usual meaning of words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment." *State v. Intercontinental, Ltd.,* 302 Md. 132, 137, 486 A.2d 174 (1985). In addition, "construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided." *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177 (1990). Finally, this Court will not read language into the statute when the language is not there. *See Amalgamated Casualty Ins. Co. v. Helms,* 239 Md. 529, 534–35, 212 A.2d 311 (1965) (under guise of construction, court should not rectify possible omissions and remedy possible defects in statute).

 Turning to the present case, we can discern no requirement in § 551(a) that the officer requesting the search warrant must have the powers of a police officer within the jurisdiction in which the premises to be searched are located. The only requirement is that the items to be seized be located in the jurisdiction of the issuing court. *See Intercontinental, Ltd.,* 302 Md. at 140, 486 A.2d 174 ("[T]he only jurisdictional requirement imposed by § 551(a) is that the property to be seized be located within the territorial jurisdiction of the issuing judge"). Indeed, the statute does not address who may apply for a warrant. The only mention of police officers is that the court may issue a search warrant "directed to any duly constituted policeman, or police officer authorizing him to search." § 551. We will not read into the statute an additional requirement that the officer applying for the warrant have the powers of a police officer within the jurisdiction in which the items to be seized are located. Under Ed. § 13–601(b)(1), the University of Maryland Police have "all the powers of a peace and police officer in this State." That authority necessarily

includes the authority to apply for a search warrant. This is only logical, as the officer in whose jurisdiction the crime has been committed will have knowledge of the investigation necessary to complete the application and affidavit.

 It also is clear that there was no error committed in the execution of the search warrant in this case. To be sure, appellant's home in Riverdale was outside the concurrent jurisdiction of the University of Maryland Police. Yet, two Prince George's County police detectives accompanied them to appellant's residence. Appellant is correct that the University of Maryland Police conducted the search, spoke with his mother, and seized the items from appellant's room. That does not mean that the evidence seized was required to be suppressed. The Prince George's County detectives may have played a limited role in executing the warrant, but the University of Maryland Police nevertheless were acting under color of authority of the Prince George's County Police Department.

Appellant refers us to *Buckner v. State*, 11 Md.App. 55, 272 A.2d 828 (1971), in support of his position. In *Buckner*, a State Police detective executed a search warrant at the defendant's home. He was assisted by a State Police sergeant, a Howard County Police sergeant, and an Assistant State's Attorney. When the detective and the Assistant State's Attorney went into one defendant's bedroom, the Assistant State's Attorney recovered a small metal box from the closet, called the detective's attention to it, and placed the box on the bed. The defendant alleged that the seizure of the box and its contents were illegal, because the Assistant State's Attorney was not a duly constituted police officer under § 551(a). The Court held that because the search "was under the personal and immediate direction" of the detective, and the detective seized the contents of the box, the fact that the Assistant State's Attorney was not a duly constituted police officer did not invalidate the search and seizure. *Buckner*, 11 Md.App. at 81, 272 A.2d 828.

Appellant maintains that, under *Buckner*, the fact that the University of Maryland Police Officers were the primary

actors in executing the warrant made the seizure illegal under § 551(a). We disagree. Here, unlike in *Buckner*, the individuals who conducted the search and seizure were police officers. Although they were out of their jurisdiction, they were accompanied by Prince George's County Police detectives. We decline to read *Buckner* as authority for invalidating the search and seizure.

 Even if we were to conclude that § 551(a) was violated, moreover, it is clear that suppression of the seized evidence was not a possible remedy for that violation, in any event. Section 551 does not remotely involve, explicitly or implicitly, the Exclusionary Rule of evidence. *Anne Arundel Co. v. Chu*, 69 Md.App. 523, 528, 518 A.2d 733 (1987), *aff'd*, 311 Md. 673, 537 A.2d 250 (1988). *See also Pearson v. State*, 126 Md.App. 530, 544, 730 A.2d 700 (1999) ("There is no sanction of exclusion of evidence for a violation of § 551 and such a sanction would be proper only when a violation of the statute coincidentally is also a violation of the Constitution.") (internal citation omitted).

 Only three flaws in the warrant allow for return of the property—that the property taken was not the same as that described in the warrant, that there was no probable cause for believing the existence of the grounds on which the warrant was issued, and that the property was taken under a warrant issued more than 15 days prior to the seizure. § 551(a). Appellant makes no claim that probable cause was lacking or that there was any constitutional violation. Accordingly, the motion court committed no error in denying appellant's motion to suppress.

### Did the motion court fail to make adequate findings in support of its ruling?

In denying appellant's motion to suppress, the motion court stated that it found "that the University of Maryland Police [were] operating under and pursuant to a valid warrant that had been issued."

Appellant claims that this ruling did not answer his arguments that the University of Maryland Police did not have authority to execute the warrant and that the warrant was not valid. Appellant further argues that the court failed to determine whether the University of Maryland Police had authority to exercise police powers in Riverdale and whether the court relied on the evidence that two Prince George's County police detectives accompanied the University of Maryland Police during the search.

■■■ Under Maryland Rule 4–252(g), in ruling on a motion to suppress evidence, "[i]f factual issues are involved in determining the motion, the court shall state its findings on the record." "Where, however, there is no dispute regarding the relevant facts, or if the trial court's resolution of an essential fact is implicit in its ruling, then no express findings are necessary." *Simpson v. State,* 121 Md.App. 263, 276, 708 A.2d 1126 (1998).

■■■ Evidence was presented that the University of Maryland Police had jurisdiction on the University campus and within the confines of the concurrent jurisdiction agreement with the Prince George's County Police Department. There was no evidence presented that Riverdale fell within the concurrent jurisdiction of the University of Maryland Police. Officer Cassady testified that there was a concurrent jurisdiction agreement, but did not know the limits of that agreement. In addition, Detective Peters testified that Riverdale was not within the University of Maryland Police force's concurrent jurisdiction. The limits of the concurrent jurisdiction were set forth in the agreement admitted into evidence. There was no dispute that Riverdale was outside the jurisdiction of the University of Maryland Police. The only manner in which the court could deny the motion was to conclude that the warrant was validly obtained by the University of Maryland Police and that the two Prince George's County police detectives present during the search satisfied the requirements of § 551(a). Therefore, we fail to see any merit in appellant's argument

that there was a need for factual findings by the suppression court.

## II.

From the start of trial, a sequestration order was in effect. The trial court took a recess between the completion of Alvarez's direct examination and the start of cross-examination. At the conclusion of the recess, defense counsel informed the court that she believed that the prosecutor had discussed Alvarez's testimony with him during the break. The prosecutor informed the court that he had told Alvarez that defense counsel would attack him on certain points and that Alvarez might want to focus on those points, but that he had not told Alvarez what to say. The prosecutor emphasized that he did not "feed [Alvarez] any information." The prosecutor further stated: "I just told him to look for these things that [defense counsel] might attack you on."

Defense counsel moved for a mistrial, stating that, in talking about the case with Alvarez, the prosecutor "discussed what his testimony should be versus what it should not be." The trial court denied the motion, stating that "nothing [the prosecutor] said would affect the way this witness testifies during cross-examination." The court also ruled that defense counsel would be permitted to question Alvarez about the conversation and to renew the motion if anything prejudicial was revealed.

Under questioning by defense counsel, Alvarez testified that he had conversed with the prosecutor during the recess but that the prosecutor had not told him what to say. The prosecutor told him what questions defense counsel might pose, and asked him how he would answer those questions. The prosecutor did not comment on whether his answers were appropriate.

Alvarez further testified that the prosecutor had told him that defense counsel might question him about the color of the holster and the handgun. Alvarez stated that he spoke with the prosecutor for about a minute to a minute and a half.

Defense counsel again moved for a mistrial. The trial court again denied the motion, stating:

What I have to be convinced [of] is that the witness is telling the truth and there was no tampering. The timing of this was very, very unfortunate. I'm not satisfied that it has reached the level of a mistrial. You know and I know and [the prosecutor] knows the trial lawyers should always prepare your witnesses for cross-examination. There is absolutely nothing wrong with preparing a witness for cross-examination.

This witness testified as best as he could recall [the prosecutor] only asked him one question that he thought [defense counsel] would ask, and that went to the color of the holster, which is, in my opinion, an extremely minor matter. You have now brought this out, the jury knows that it occurred. We have all the facts, but I don't think now as a matter of due process or fairness to your client that a mistrial is warranted.

* * *

[T]he timing was unfortunate, but I am satisfied that it has not affected the integrity of the proceedings to any extent whatsoever and that the witness was not told how to answer, he was merely, maybe perhaps even reassured about the nature of your cross-examination.

Appellant contends that the trial court abused its discretion in denying his motion for mistrial because the prosecutor violated the sequestration order. He further claims that even if the sequestration order was not violated, the prosecutor's actions amounted to a denial of due process. He maintains that the prosecutor coached Alvarez and thus impinged on appellant's right to conduct a full cross-examination. He argues that there was no manner in which to gauge the amount of prejudice that the coaching created and, therefore, a mistrial was the only appropriate remedy.

 " '[T]he declaration of a mistrial is an extraordinary act which should only be granted if necessary to serve

the ends of justice.'" *Hunt v. State*, 321 Md. 387, 422, 583 A.2d 218 (1990), *cert. denied*, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991) (quoting *Jones v. State*, 310 Md. 569, 587, 530 A.2d 743 (1987)). The granting of a motion for a mistrial is committed to the sound discretion of the trial court. *Poole v. State*, 295 Md. 167, 183, 453 A.2d 1218 (1983). "We will not reverse a trial court's denial of a motion for mistrial unless the defendant was so clearly prejudiced that the denial constituted an abuse of discretion." *Hunt*, 321 Md. at 422, 583 A.2d 218.

We must first determine if the sequestration order was violated. Under Md. Rule 5–615(a), "upon the request of a party made before testimony begins, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." In addition, "[a] party or an attorney may not disclose to a witness excluded under this Rule the nature, substance, or purpose of testimony, exhibits, or other evidence introduced during the witness's absence." Md. Rule 5–615(d)(1).

> The essential purpose of the Rule is to prevent one prospective witness from being taught by hearing another's testimony; its application avoids an artificial harmony of testimony that prevents the trier of fact from truly weighing all the testimony; it may also avoid the outright manufacture of testimony.

*Hurley v. State*, 6 Md.App. 348, 351–52, 251 A.2d 241, *cert. denied*, 255 Md. 742 (1969).

"When there has been a violation of a sequestration order, whether there is to be a sanction and, if so, what sanction to impose, are decisions left to the sound discretion of the trial judge." *Redditt v. State*, 337 Md. 621, 629, 655 A.2d 390 (1995). "The facts of a number of Maryland decisions demonstrate the extent to which the decision whether to exclude is influenced by the degree of schooling in the details of evidence obtained by the potential witness as a result of the sequestration order violation." *Id.* at 631–32, 655 A.2d 390.

Although the prosecutor spoke with Alvarez, there is no indication that their conversation resulted in Alvarez learn-

ing anything about another witness's testimony, in violation of Rule 5–615. Nonetheless, the court considered the prosecutor's actions to have been a violation of the sequestration order, and referenced *Wooten–Bey v. State,* 318 Md. 301, 568 A.2d 16 (1990). In that case, at the end of the defendant's direct examination, the court took a lunch recess and ordered that the defendant and defense counsel not discuss anything about the defendant's testimony. The court did not forbid all consultation between counsel and the defendant, only consultation concerning the defendant's prospective testimony. The Court of Appeals held that the order was appropriate. *Id.* at 308–09, 568 A.2d 16.

As evidenced by Alvarez's testimony, although the prosecutor may have alerted Alvarez to potential questions from defense counsel, he did not coach Alvarez on his answers, did not indicate whether Alvarez's proposed answers were appropriate or inappropriate, did not tell Alvarez what to say, and did not attempt to interject any information into the trial. The conversation lasted, at most, 90 seconds and, as pointed out by the trial court, focused on minor matters in evidence, *i.e.,* the color of the holster and gun appellant was alleged to have been carrying. The trial court allowed full inquiry into the conversation and correctly determined that Alvarez's testimony would not be affected and that appellant had not been denied due process. *See State v. Earp,* 319 Md. 156, 170–72, 571 A.2d 1227 (1990) (concerns over witness preparation center on tainting a witness, improper influence brought to bear on witness, or injecting information into trial; court should consider whether witness's testimony would be unreliable; court proceeded correctly allowing cross-examination of witness concerning influence brought to bear on testimony, which allowed trier of fact to adequately assess witness's testimony). We conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial.

## III.

Appellant was charged with assault and related offenses arising from the October 12, 1998 incident. He also was

charged with transporting the handgun that was found in his vehicle on October 14, 1998, when he was arrested. The charge of transporting a handgun was severed from the assault charges.

At the start of trial, defense counsel moved *in limine* to exclude evidence that appellant had been transporting a handgun when he was arrested. Counsel alleged that this amounted to "other crimes" evidence, that there was not a sufficient nexus between the alleged assault and the handgun, and that the prejudicial effect of the evidence outweighed its probative value. The prosecutor commented that Alvarez would identify the handgun. The court denied the motion. It then heard further argument, and again denied the motion.

Appellant contends that the trial court abused its discretion in admitting evidence that he was transporting a handgun on the day of his arrest because it did not engage in the three-step test to determine the admissibility of "other crimes" evidence.

This question is not properly before us because objections were not made to all of the testimony concerning appellant's transportation of the handgun on the date of his arrest. During Alvarez's testimony, he was shown the gun that was seized from appellant's vehicle and was asked if it looked like the type of gun he saw appellant carrying. Alvarez stated: "[Y]es, it seems like the gun that I saw. . . . Similar size. It was not a revolver." Defense counsel raised no objection to this testimony.

Sergeant Robert Mueck, a University of Maryland Police officer, testified that he participated in arresting appellant, and that when the officers stopped appellant's car, he told them that he had a weapon in his vehicle. This testimony came at the end of the first day of trial. Defense counsel failed to raise any objection. The next day, at the start of the proceedings, defense counsel stated that she had neglected to object to Sergeant Mueck's testimony about appellant's statement that he had a gun in the car. Thus, defense counsel was aware that by failing to object, she had waived any objection.

*See* Md. Rule 4–323(a) ("An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived."); *Bruce v. State,* 328 Md. 594, 628, 616 A.2d 392 (1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993) (quoting 5 Lynn McLain, *Maryland Evidence* § 103.3, at 17 (1987)) (" '[i]f opposing counsel's question is formed improperly or calls for an inadmissible answer, counsel must object immediately' "). Defense counsel also failed to object to Lieutenant Hamrick's testimony that Sergeant Schallhorn recovered a 9 millimeter semi-automatic pistol from appellant's car.

Defense counsel did object when the pistol was admitted into evidence, during the testimony of the Sports Authority employee from whom appellant purchased the weapon. Counsel also objected when the gun case and spare magazines were offered into evidence, during the testimony of Sergeant Schallhorn. Finally, counsel objected to the admission of the rounds of ammunition found on appellant's person.

As defense counsel raised objections only to some of the evidence regarding the handgun found in appellant's vehicle, this question is not properly before us. *See Reed v. State,* 353 Md. 628, 643, 728 A.2d 195 (1999) (when evidence that has been contested in a motion *in limine* is admitted at trial, a contemporaneous objection must be made pursuant to Md. Rule 4–323(a) in order for that question of admissibility to be preserved for appellate review); *Prout v. State,* 311 Md. 348, 356, 535 A.2d 445 (1988), *superseded by rule on other grounds, Beales v. State,* 329 Md. 263,. 619 A.2d 105 (1993) (with motion *in limine,* "[i]f trial judge admits the questionable evidence, the party who made the motion ordinarily must object at the time the evidence is actually offered to preserve his objection for appellate review."); *Clark v. State,* 97 Md.App. 381, 394–95, 629 A.2d 1322 (1993) (objections to admission of evidence are waived when the same evidence is admitted without objection). Nonetheless, we shall address appellant's contention.

■■■■■■■ Generally, "evidence of a defendant's prior criminal acts may not be introduced to prove guilt of the offense for which the defendant is on trial." *Ayers v. State*, 335 Md. 602, 630, 645 A.2d 22 (1994), *cert. denied*, 513 U.S. 1130, 115 S.Ct. 942, 130 L.Ed.2d 886 (1995). Prior criminal acts are excluded to avoid confusing the jurors, prejudicing their minds against the defendant, and predisposing them to a belief that the defendant is guilty. *Terry v. State*, 332 Md. 329, 334, 631 A.2d 424 (1993). "Evidence of other crimes may be admitted, however, if it is substantially relevant to some contested issue in the case and if not offered to prove the defendant's guilt based on a propensity to commit crime or his character as a criminal." *State v. Faulkner*, 314 Md. 630, 634, 552 A.2d 896 (1989); *See also Emory v. State*, 101 Md.App. 585, 602–05, 647 A.2d 1243, *cert. denied*, 337 Md. 90, 651 A.2d 855 (1995) (stressing the importance of substantial relevance and genuine controversy as obstacles to the admissibility of "other crimes" evidence).

■■■■■■■ If the "other crimes" evidence has special relevance, then the trial court must determine "whether the accused's involvement in the other crimes is established by clear and convincing evidence." *Faulkner*, 314 Md. at 634, 552 A.2d 896. Finally, the trial court must balance the necessity for and probative value of the "other crimes" evidence against any undue prejudice likely to result from its admission. *Id.* at 635, 552 A.2d 896. This is a discretionary determination. *Id.* If the trial court allows the admission of "other crimes" evidence, it should state its reasons for doing so, to enable a reviewing court to assess whether the law has been applied correctly. *Streater v. State*, 352 Md. 800, 810, 724 A.2d 111 (1999).

■■■■■ In the present case, defense counsel claimed that there was not sufficient evidence to draw a nexus between the offenses alleged to have been committed by appellant on October 12, 1998, and the transportation of the handgun at the time of his arrest on October 14, 1998. Counsel maintained that the prejudicial effect of the evidence outweighed its

probative value and that the evidence of appellant's transportation of the gun amounted to "other crimes" evidence.

When the court learned that Alvarez was going to identify the gun, it denied the motion. It then entertained further argument from counsel. Every step in the three-step process was touched upon by defense counsel. Counsel emphasized that the charges arising from appellant's transportation of the handgun had been severed from the assault charges and that the State was using evidence of that offense in an impermissible manner. Counsel recounted how the gun was recovered and argued that the prejudicial effect of the evidence outweighed its probative value. Accordingly, defense counsel set before the court all of the steps necessary for the court to reach its conclusion. In addition, the court's question about whether Alvarez would identify the gun indicated that it was considering the importance of that evidence.

We conclude that unlike in *Streater*, in which there was nothing to indicate that the court properly considered the admissibility of "other crimes" evidence, the record in this case was not silent. Although the trial court did not expressly state its reasons on the record, the record discloses that it was aware of the governing rule and appreciated the importance of the evidence and its impact on the trial. *See Ayers*, 335 Md. at 635–36, 645 A.2d 22 (although trial judge did not spell out every step in thought process in admitting "other crimes" evidence, where record revealed, *inter alia*, that judge was aware of the governing rule and appreciated importance of the evidence, there was no error in placing evidence before the jury).

## IV.

Finally, appellant contends that the evidence was insufficient to sustain his conviction because nothing that he did or said indicated an intent to harm Alvarez, then and there. Rather, appellant argues, to the extent that the evidence showed he had any intent to harm Alvarez, the intent was to harm him in the future, and only if Alvarez failed to

give him an "A" grade or told anyone about the incident. Appellant maintains that Alvarez's testimony that he was afraid at the time of the incident did not establish the threat of imminent bodily harm.

The standard for our review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831 (1990). The jury, as the trier of fact, may " 'draw reasonable inferences from basic facts to ultimate facts.' " *Barnhard v. State,* 86 Md.App. 518, 532, 587 A.2d 561 (1991), *aff'd,* 325 Md. 602, 602 A.2d 701 (1992) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). Weighing the credibility of the witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder. *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037 (1991). In performing its fact finding role, the jury is free to accept the evidence that it believes and reject that which it does not. *Muir v. State,* 64 Md.App. 648, 654, 498 A.2d 666 (1985), *aff'd,* 308 Md. 208, 517 A.2d 1105 (1986).

Appellant was convicted of second degree assault under Md.Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Art. 27, § 12A, which encompasses the common law offenses of assault, battery, and assault and battery. Art. 27, § 12. Maryland recognizes two forms of assault: "(1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery." *Dixon v. State,* 302 Md. 447, 457, 488 A.2d 962 (1985) (quoting R. Perkins, *Perkins on Criminal Law* 114 (2nd ed.1969)). Assault of the intentional threatening variety "is a fully consummated crime once the victim is placed in reasonable apprehension of an imminent battery." *Lamb v. State,* 93 Md.App. 422, 442, 613 A.2d 402 (1992), *cert. denied,* 329 Md. 110, 617 A.2d 1055 (1993). "All that is required in terms of perception is an

apparent present ability from the viewpoint of the threatened victim." *Id.* at 443, 613 A.2d 402.

Alvarez testified that appellant demanded that Alvarez give him an A for the class or appellant would kill him, and then raised his jacket to display a gun in a holster. Appellant then detailed the manner in which he would dispose of Alvarez's body. Alvarez stated that he experienced immediate fear for his life and that he had no idea what was going on or what he should do. He explained his efforts to disavow responsibility for appellant's grade and to keep appellant from becoming violent, and expressed his concern, upon Cremins' return, that the situation would get out of hand and that he and/or Cremins might be shot. He conveyed how, after appellant left his office, he was afraid to use the telephone or to walk into the hallway, for fear that appellant might hear him call the police or question where he was going. Based on this evidence, a rational trier of fact could conclude that, when appellant displayed the gun and threatened Alvarez, Alvarez was placed in reasonable apprehension of an imminent battery, even though the words that appellant used constituted a threat of harm to occur conditionally and in the future. The evidence was sufficient to support the convictions.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**