9 A.3d 88

Stanley ROCHKIND, et al.

v.

Danielle FINCH, next friend of Tyaih Dodd, a minor.

No. 01694, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Dec. 1, 2010.

Robert F. Dashiell, Pikesville, MD & Aaron I. Lubling, Baltimore, MD (S. Todd Wilson, Christopher M. McNally, Bodie, Nagle, Dolina, Smith & Hobbs, PA, on the brief, Towson, MD), for appellant.

Scott E. Nevin (Peter T. Nicholl, on the brief) Baltimore, MD, for appellee.

Panel: KRAUSER, C.J., MATRICCIANI, JAMES P. SALMON (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Appellants Stanley Rochkind, J.A.M. # 18 Corporation, and Dear Management & Construction Co., Inc. (collectively "appellants"), appeal the jury verdict in the Circuit Court for Baltimore City in favor of appellee Danielle Finch, next friend of Tyaih Dodd, a minor (collectively "appellee"). Appellants

present twelve issues for our consideration, which we have rephrased as such:

I. Whether appellants should be granted a new trial because the court admitted into evidence a Consent Order which contained a list of over 700 properties and 86 corporations which were not parties to the instant case.

II. Whether the court committed reversible error by refusing to include the owner/operator issue on the multiple-question verdict sheet.

III. Whether the court committed reversible error by denying appellants' Rule 2–502 motion which sought dismissal of appellee's pierce-the-corporate-veil claim.

IV. Whether the court committed reversible error when it permitted appellee to amend her complaint on the day of trial.

V. Whether the court committed reversible error by denying appellants' motions for judgment and judgment notwithstanding the verdict ("JNOV") because Stanley Rochkind was not the owner of the property under Maryland corporate law or under the Baltimore City Housing Code ("the Code").

VI. Whether the court committed reversible error by denying appellants' motions for judgment and JNOV because Rochkind was not the operator of the property under the Code.

VII. Whether the court committed reversible error by denying appellants' motion to strike appellee's experts because the experts rendered no substantive opinion prior to trial.

VIII. Whether the court committed reversible error by refusing to grant appellants a new trial because of racially-charged comments by appellee's counsel.

IX. Whether the circuit court committed reversible error by refusing to give a requested supervening cause instruction.

X. Whether the circuit court lacked authority to issue the November 10, 2008 order granting appellee's motion to

strike appellant's experts in light of the fact that it had denied the motion during the September 9, 2008 hearing.

XI. Whether the circuit court committed reversible error by not permitting Charles Runkles to testify during appellants' case-in-chief.

XII. Whether the court committed reversible error by denying appellants' motion for judgment and motion for JNOV because appellee did not present any evidence that the flaking paint was lead-based paint.

We shall resolve the first and second issues in appellants' favor and we shall reverse the circuit court's ruling and remand for a new trial. Accordingly, we need not reach the remaining issues.

## FACTS

Appellee Danielle Finch, is the mother of Tyaih Dodd, a minor. In July of 1986, Mary Johnson moved into a property at 2212 East Lanvale Street ("2212 East Lanvale") in Baltimore City with her four children, including Danielle Finch.[1] Johnson's landlord was appellant Dear Management & Construction Company, Inc. ("Dear Management"), and appellant J.A.M. # 18 Corporation ("JAM 18"), which had legal title to 2212 East Lanvale during the time that appellee occupied the premises, and of which appellant Stanley Rochkind was the sole shareholder. At the time she moved into the row house, Johnson noticed areas of peeling paint on the inside and outside of the house.

On May 31, 2000, Dodd was born. At the time, Finch was still living at 2212 East Lanvale, and after Dodd was born they occupied the back bedroom on the second floor. The windows in this bedroom had chipping, peeling, and flaking paint on them. On November 15, 2002, the Baltimore City Health Department issued an emergency violation notice and an order to remove lead nuisance after an inspection at 2212 East

---

1. Finch was eight years old at the time her mother moved into 2212 East Lanvale.

Lanvale revealed that the house contained lead-based paint. On August 5, 2002, Dodd was tested for lead poisoning and the results showed that the child had lead exposure. Appellee, as well as Johnson, moved out of the house in August 2003.

On July 22, 2004, appellee filed a complaint against appellants in the Circuit Court for Baltimore City, alleging that negligence and unfair trade practices [2] had resulted in Dodd's exposure to lead paint at 2212 East Lanvale and requesting a jury trial. On March 14, 2008, before trial commenced, appellants filed a motion under Maryland Rule 2–502 requesting that the court dismiss appellee's claims based upon her pierce-the-corporate-veil theory. On March 17, 2008, appellee filed an amendment by interlineation to her complaint in which she indicated that she would be pursuing the theories of "piercing the corporate veil and/or individual liability." On March 26, 2008, appellants filed their motion to strike the amendment.

Trial commenced on March 31, 2008. On that date, the court denied appellants' motion to strike and permitted the case to proceed with the amended complaint.[3] The court also denied appellants' Rule 2–502 motion, finding that there was a sufficient dispute as to "whether Rochkind controls the whole or part" to put that question before the jury. The court also denied appellee's request that it strike appellants' expert witnesses.

The court admitted into evidence, over objection of appellants' counsel, a Consent Order [4] among 86 corporations, in-

---

2. The unfair trade practices claim was dropped before trial.

3. On the day of trial, appellants made a motion under Rule 2–502 to dismiss appellee's pierce the corporate veil claim. Appellee states in her brief that she withdrew this claim, but appellants state that "the trial proceeded with Appellee's pierce the corporate veil claims remaining in this case." The record is unclear, as the trial judge never made a definitive ruling on the motion. Because this issue is not dispositive of the appeal, we need not resolve it here.

4. Administrative proceedings before the Maryland Department of the Environment, Waste Management Administration, Case Number SA–2001–0097 (2001).

cluding Dear Management, and the Maryland Department of the Environment, under which the corporations agreed to meet certain deadlines with respect to inspecting and/or abating lead from over 700 properties. 2212 East Lanvale was among the properties listed in the Consent Order. Rochkind signed it as guarantor in the event that the principal parties to the document failed to fulfill their financial obligations. The Consent Order also imposed a penalty of $90,000 for prior non-compliance with the lead-risk reduction standards.

On April 3, 2008, appellants moved for judgment at the close of appellee's case and the court denied this motion. On April 7, 2008, appellants moved for judgment at the close of the entire case and the court denied this motion. On April 8, 2008, the jury returned a verdict in favor of appellee in the amount of $1,750,000, which the court later reduced to an award of $590,000 pursuant to § 11–108 of the Courts and Judicial Proceedings Article.

On April 16, 2008, appellants filed a motion for JNOV and a motion for a new trial, to which appellee filed an opposition. Appellants then filed a reply in support of the motion for JNOV and three supplements to that motion, to which appellee responded by filing a motion to strike their second and third supplements. On September 9, 2008, the court heard argument on the post-trial motions and denied appellee's motion to strike and also denied appellants' motion for JNOV and motion for a new trial. Appellants timely filed their appeal to this Court on September 19, 2008. The circuit court issued a written order on November 10, 2008, in which it granted appellee's motion to strike the second and third supplements.

Additional facts will be included in our discussion of the issues.

## DISCUSSION

### I.

Appellants contend that they should be granted a new trial because the trial court admitted into evidence the Consent

Order, discussed above. Appellants argue that the court allowed appellee to use the Consent Order improperly by insinuating that Rochkind was a party to that order and by misleading the jury into believing that appellants were the subject of an investigation by Baltimore City authorities. Appellants further contend that the Consent Order was not relevant to appellee's negligence case against appellants and that the evidence should have been excluded at trial because it was not produced by appellee during discovery, and it was not identified as a document that she would introduce at trial.

Appellee contends that the trial court did not err by admitting the Consent Order into evidence, and argues that appellants erroneously equate the admission of the Consent Order with the admission of Baltimore City Health Department lead violation notices. Appellee argues that the Consent Order was relevant because it specifically lists JAM 18 and Dear Management as "owner" and "property manager" respectively, and because Rochkind signed a personal guaranty as part of the Consent Order. This, appellee argues, showed that Rochkind was "involved with and controlled the subject premises." Therefore, appellee contends, the probative value of the Consent Order substantially outweighed any prejudicial effect on appellants.

The Court of Appeals stated the standard of review associated with a trial court's determination as to relevance in another recent lead paint case, *Brown v. Daniel Realty Co.*, 409 Md. 565, 976 A.2d 300 (2009), where it explained:

> Application of the abuse of discretion standard depends on whether the trial judge's ruling under review was based on a discretionary weighing of relevance in relation to other factors or on a pure conclusion of law ... when the trial judge's ruling involves a legal question, we review the trial court's ruling *de novo*.

*Id.* at 584, 976 A.2d 300 (quoting *Figgins v. Cochrane*, 403 Md. 392, 419, 942 A.2d 736 (2008)).

With regard to the Consent Order's relevance, the trial court found: "I don't think anybody would argue that [the Consent Order] is not probative. The issue is, is it more

prejudicial than probative." Because the trial court did not explicitly state that the Consent Order was relevant as a matter of law, but exercised its discretion in balancing the probative value of the Order against its prejudicial impact, the abuse of discretion standard applies. For the reasons discussed below, we hold that the circuit court abused its discretion in admitting the Consent Order into evidence.

Rule 5–401 establishes the definition of relevant evidence: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In order to determine the relevance of the Consent Order as it pertains to appellants, we must ascertain what appellee was required to show in order to establish negligence.

The Court of Appeals clarified what a plaintiff is required to show in lead paint poisoning negligence actions based upon violations of the Baltimore City Housing Code in *Brooks v. Lewin Realty III, Inc.,* 378 Md. 70, 835 A.2d 616 (2003). The Court held:

> [I]n order to make out a *prima facie* case in a negligence action, all that a plaintiff must show is: (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of. Proximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent. It is the existence of this cause and effect relationship that makes the violation of a statute prima facie evidence of negligence.

*Id.* at 79, 835 A.2d 616.

■ The Court also held that the plaintiff in a lead paint poisoning negligence action does not have to show that the landlord had notice of the violation of the statute in order to establish a *prima facie* case. *Id.* at 72, 835 A.2d 616. One additional requirement that is applicable here is that a plaintiff must establish that the statute, or in this case, the Code,

applies to the defendant. We are left, then, with three requirements that appellee had to address in order to make out a prima facie case of negligence under the Code: (1) that the Code applied to appellants; (2) violation of the Code; (3) proximate cause. Here, Rochkind maintains that he was neither an owner nor an operator as the Code defines those terms, and thus the Code does not apply to him.

Appellees argue that the Code applies to Rochkind because he could be considered either an owner or operator under the code definitions. Section 310(a)[5] of the Baltimore City Housing Code states: "Any person who is either an owner or operator of a property subject to this Code shall be responsible for compliance with all of the provisions of the Code[.]" Section 105(jj) of the Code defines "operator" and "owner" as follows:

> Operator shall mean any person who has charge, care or control of a building, or part thereof, in which dwelling units or rooming units are let or offered for occupancy, and shall include a lessee, sub-lessee, any vendee in possession, or any other person otherwise managing or operating such building, or part thereof.

\* \* \*

---

**5.** When we refer to the Baltimore City Housing Code ("Housing Code") in this opinion, we are referring to the Housing Code as it existed during the time period applicable to this case: May 31, 2000, to August 5, 2002. Effective January 1, 2003, the Baltimore City Council repealed Division V of Article 13 of the Baltimore City Code, which comprised the Housing Code. Balt. City Code (2000, 2003 Supp.), Art. 13, Division V. In its place, the City Council enacted the Building, Fire, and Related Codes of Baltimore City, which includes the International Property Management Code (IPMC). Section 202.2.11 of the IPMC now defines "owner" as follows:

> **202.2.12 Owner.** "Owner" means any person that:
> 1. has a legal or equitable interest in the property,
> 2. is recorded in the land records as holding title to the property, or
> 3. otherwise has control of the property, with or without accompanying possession of the property, including:
> a. a guardian of the person or estate of an owner,
> b. a trustee, including a trustee in bankruptcy, of an owner, or
> c. the personal representative of the estate of an owner.

Owner shall mean any person, firm, corporation, guardian, conservator, receiver, trustee, executor, or other judicial officer, who, alone or jointly or severally with others, owns, holds, or controls the whole, or any part, of the freehold or leasehold title to any dwelling or dwelling unit, with or without accompanying possession thereof[.]

Rochkind's testimony formed the basis for appellee's argument that he personally exercised control over the subject property. Rochkind testified that "[he] and [he] alone" had the final decision-making authority to sell or buy properties for JAM 18. This testimony formed the basis for appellee's argument that Rochkind controlled the title to 2212 East Lanvale. Appellee argues that JAM 18, as owner of the title, and Dear Management, as an operator, are also covered by the Code.

In the recent case of *Allen v. Dackman*, 413 Md. 132, 991 A.2d 1216 (2010), the Court of Appeals answered the question of whether a member of a limited liability company that owns a piece of property can be considered an owner or operator under the Housing Code. The Court held that "a reasonable trier of fact could find that [the member] was an 'owner' of the property, because there is evidence that he had the ability to change or affect title to the property purchased in the name of [the LLC]." *Id.* at 145, 991 A.2d 1216. The *Dackman* Court "recognize[d] a number of ways in which a reasonable trier of fact could determine" that an individual "had the 'ability to change or affect' title to the property." *Id.* at 149, 991 A.2d 1216. This included:

[being] responsible for running the day-to-day affairs of [the LLC] . . . execut[ing] the deed certification when [the LLC] acquired a property, sign[ing] the complaint seeking to remove [tenants] from the property, and sign[ing] the deed when [the LLC] sold the property.

*Id.*

■ It is unclear how the Consent Order, which Rochkind signed only as a guarantor, would shed light on whether he

should be considered an owner or operator under the Baltimore City Housing Code. Even if some portion of the Consent Order was minimally relevant to support the "ownership" connection between Rochkind and 2212 East Lanvale, Rochkind had already conceded that JAM 18 was the owner of the property, and that he was its sole shareholder. The Consent Order does not, in itself, show that Rochkind had "charge, care or control" of 2212 East Lanvale, even under the expanded *Dackman* definition. The fact that he agreed to pay fines at some later date if the principal parties did not fulfill their obligations with respect to 700 other properties does not reveal anything about whether he controlled the premises during the period when Dodd resided there. It also says nothing about whether he owned, held, or controlled title to the house.

It is even more difficult to imagine a scenario whereby the Consent Order could be considered relevant to the other two elements of a *prima facie* negligence claim. Certainly, the Consent Order does not show a violation of the Code. The Consent Order simply lists the 2212 East Lanvale address and makes no mention of what the conditions are at this or any of the other properties listed. Furthermore, appellee had already introduced a violation notice that was issued by the Baltimore City Health Department for 2218 East Lanvale. The violation notice was sufficient to satisfy the second element by establishing a statutory violation. There is no plausible argument that the Consent Order could prove proximate cause, the final element of a *prima facie* negligence claim.

■ Even if the Consent Order could be considered relevant, the court should not have allowed it to be introduced. Under Rule 5–403, otherwise relevant evidence may be excluded if

its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The Consent Order implicates nearly all the concerns listed in Rule–403. The Consent Order prejudiced appellants by associating them with the violations and penalties listed in the document. Appellee used the Consent Order to mislead the jury and to confuse the issues by asserting that Rochkind was a party to the order and thus had acknowledged that lead risk reductions had not been done. There was no need to introduce the Consent Order to show a violation of the statute with the city violation notice already in the record. Therefore, its introduction was unnecessarily cumulative. Any value that this document could add to the plaintiff's case was outweighed by the potential of prejudice.

We dealt with a similar issue in *Lewin Realty III, Inc. v. Brooks,* 138 Md.App. 244, 771 A.2d 446 (2001), where we held that the trial court erred in admitting into evidence lead paint violation notices pertaining to other properties. The violation notices were issued by the Baltimore City Health Department to the defendant companies. *Id.* at 258, 771 A.2d 446. We held that the notices constituted other crimes, wrongs, or acts, and that Rule 5–404(b) governed their admission.[6] Rule 5–404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

---

**6.** We have not analyzed the Consent Order using Rule 5–404(b) because we do not believe that Rochkind's act of signing it as a guarantor falls within the rule's ambit. The very nature of a guarantor means that the person is acting as a surety in the event that the party primarily responsible for a financial obligation cannot fulfill the obligation. Thus, the act of signing the Consent Order means only that Rochkind is legally obligated in the event of a default by the principal parties listed in the Consent Order. There is nothing in the Consent Order which suggest that JAM 18 had committed a prior bad act.

With respect to Dear Management, Rule 5–404(b) may be applicable because Charles Runkles, the head of Dear Management, signed the Consent Order on behalf of all the entities listed. Under the three-part test for admissibility of prior bad act evidence, however, the evidence must be substantially relevant to a contested issue in the case. *See State v. Faulkner,* 314 Md. 630, 634–635, 552 A.2d 896 (1989). The Consent Order is not relevant to a contested issue in the case against Dear Management and thus fails the first requirement for admissibility under Rule 5–404(b).

conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity or absence of mistake or accident.

Under the test to determine admissibility of prior bad acts, evidence of other crimes, wrongs, or acts must be substantially relevant to some contested issue in the case. *Id.* at 269, 771 A.2d 446. In *Brooks,* we held that the violation notices were not specially relevant to a contested issue in the case because the issue of notice was not genuinely contested by the defendants. *Id.* at 270–74, 771 A.2d 446. The Court of Appeals granted *certiorari* to address the issue of whether a showing of notice is ever required in lead paint poisoning negligence actions based upon violations of the Baltimore City Housing Code and held that plaintiffs are not required to show notice. *Supra,* pp. 203–04, 9 A.3d 92–94. The Consent Order, like the violation notices in *Brooks,* was not relevant to any contested issue in appellee's negligence action and thus should have been excluded as a matter of law.[7]

In *Brooks,* we addressed improperly admitted evidence as such:

> In a civil case, the appellant not only must demonstrate error, but also must show that the error caused prejudice. Prejudice exists when the error influenced the outcome of the case. Whether an error was prejudicial is determined on a case-by-case basis. In determining whether improperly admitted evidence prejudicially affected the outcome of a civil case, the appellate court balances "the probability of prejudice from the face of the extraneous matter in relation to the circumstances of the particular case[.]" It is not the

---

7. In *Brooks* we also held, in the alternative, that "if we were to analyze the admissibility of prior violation notices under Maryland Rule 5–403, we would conclude that whatever marginal relevancy they had was so far outweighed by their likelihood of being misused as propensity evidence that they would fail the 'probative value versus prejudicial effect' balancing test as a matter of law." *Id.* at 274, 771 A.2d 446.

possibility, but the probability, of prejudice which is the object of the appellate inquiry.

*Id.* at 273–274, 771 A.2d 446.

In the instant case, prejudice is apparent on the face of the record. During jury deliberations, the jury wrote to the judge asking: "We would like to know how many cases … Rochkind [has] been involved in [over] the past 10 years. We are trying to see if it is a pattern with the properties that he has owned or previously owned for lead cases only." This clearly demonstrates that the jury had made a connection between Rochkind and the properties listed in the Consent Order. The court also permitted appellee's counsel to refer to the Consent Order as being the result of an investigation by Baltimore City authorities, which likely influenced the jury and led to their question on Rochkind's prior history.

Here, as in *Brooks,* appellee's counsel sought to use the evidence to its "maximum prejudicial effect" by appealing to the jury on propensity grounds. *Id.* at 274–75, 771 A.2d 446. As in *Brooks,* we hold that it was more than likely that the jury considered the evidence in returning a verdict against Rochkind. *Id.* Because we hold that Rochkind should be granted a new trial as a result of this error, we do not reach the other issues that Rochkind has raised in his brief.

Pursuant to Rule 8–503(f) [8], the other two appellants have incorporated section VI of Rochkind's brief regarding the admission of the Consent Order into evidence. The same analytical framework we have outlined above applies to the other two appellants. Appellee brought a negligence action against JAM 18 and Dear Management. The Consent Order, as shown above, was not relevant to any of the requirements of the negligence claim and was prejudicial to JAM 18 and to Dear Management. Representatives of these entities were subjected to similar questioning by appellee's counsel regard-

---

**8.** Rule 8–503(f) states: "In a case involving more than one appellant or appellee, any appellant or appellee may adopt by reference any part of the brief of another."

ing the Consent Order, and were also subjected to the same misleading insinuation that the Consent Order was the result of an investigation rather than simply being a list of properties, some of which required certification. We therefore hold that all appellants should be granted a new trial in order to remedy the prejudice which resulted from the introduction of the Consent Order.

## II.

### A. Verdict Sheet

■ Appellants also contend that the circuit court erred by refusing to include the owner/operator issue on the multiple-question verdict sheet. We agree.

The verdict sheet that was used in this case contained four questions:

1. Do you find that Defendants, JAM # 18 Corporation and Dear Management Construction, were negligent in exposing Plaintiff, Tyaih Dodd, to lead paint?

2. Do you find that Defendant, Stanley Rochkind, was negligent in exposing Plaintiff, Tyaih Dodd, to lead paint?

3. Do you find that Defendants' conduct was a substantial factor in causing Plaintiff Tyaih Dodd's injuries?

4. What damages, if any, do you award as a result of Tyaih Dodd's injury?

■ The purpose of a verdict sheet is to facilitate the deliberations of the jury. *Ogundipe v. State*, 191 Md.App. 370, 385, 991 A.2d 200 (2010). The use of a written, or "special," verdict sheet was designed for cases involving multiple issues and multiple parties. *Sun Cab Co. v. Walston*, 15 Md.App. 113, 161, 289 A.2d 804 (1972). As discussed in Part I, above, in order to use violation of a statute to establish a *prima facie* case of negligence, a plaintiff must demonstrate that the statute in question applied to the defendant. If a plaintiff establishes this, along with the other necessary ele-

ments [9], he is entitled to have his negligence claim submitted to the jury. *Brooks,* 378 Md. at 77, 835 A.2d 616. He must still, however, provide additional evidence of the defendant's negligence in order to prevail on that claim.

In this case, the question of whether the Housing Code applied to Rochkind hinges on whether he is an owner/operator under the definition set out in Section 105(jj). If—and only if—the jury finds that Rochkind *is* an owner/operator under the Code, will the jury have to determine whether he was negligent in exposing Tyaih Dodd to lead paint. The circuit court was ostensibly aware of this two-pronged test, but nevertheless denied appellant's request to add an additional question to the verdict sheet.[10] We believe this denial was in error. The *Dackman* decision explains that a defendant's owner/operator status and the ultimate question of negligence are separate issues to be determined by the trier of fact. 413

---

**9.** As previously noted, the other elements are: (1) that the statute or ordinance was designed to protect a specific class of persons which includes the plaintiff, and (2) that the violation proximately caused the injury complained of.

**10.** At trial, before closings arguments, the court permitted counsel to present any objections to the proposed verdict sheet and stated:

THE COURT: Okay. All right. So let's first ... take Stanley Rochkind's objections to the verdict sheet.

MR. LUBLING: Yes, Your Honor. I think ... the issue of [whether Mr. Rochkind is an] owner is a question we're leaving for the jury. Therefore that's a question that I would like them to answer [...]

THE COURT: But don't they have to find him to be an owner or operator before they can find him negligent?

MR. LUBLING: If they actually understood everything Your Honor said [in jury instructions], which can only be proven from the verdict sheet.

THE COURT: Which—of course they've understood everything that I've said Mr. Lubling. So, you're suggesting that there should be a Question Two [on the verdict sheet]. "Do you find that Defendant Stanley Rochkind was an owner or operator of 2212 East Lanvale Street," right?

MR. LUBLING: I would actually have two questions. Was he an owner, was he an operator?

THE COURT: They are separate questions, all right.

MR. LUBLING: That's the only way to really preserve it for appeal.

THE COURT: Well, I'm going to deny your request and note your exception for the record.

Md. at 150–51, especially n. 13, 991 A.2d 1216. Accordingly, we hold that the court erred in refusing to include a separate question on the verdict sheet that specifically asked the jury to find whether Rochkind was an owner or operator of the property at 2212 East Lanvale Street.

## B.  Jury Instructions

In addition, based on our review of the court's jury instructions and the recent *Dackman* decision, we believe that an additional jury instruction is necessary.  Although the circuit court instructed the jury on the meaning of "owner" and "operator" under the Housing Code, it did not explain that answering the owner/operator question was a prerequisite to answering the question on Mr. Rochkind's individual liability. We believe that an additional instruction is necessary to make clear the two-prong test explicated by the Court of Appeals in *Dackman.*

We therefore reverse and remand for further proceedings in accordance with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**